## R. W. MORTIMORE v. THE STATE.

No. 636.    Decided May 25, 1910.

Rehearing Denied October 12, 1910.

**1.—Embezzlement—Indictment—Precedent.**

Where, upon trial of embezzlement, the indictment followed the form which has been held good in former cases, there was no error in overruling a motion to quash the same.

**2.—Same—Want of Fraudulent Intent—Insufficiency of the Evidence.**

Where, upon trial of embezzlement, the evidence wholly failed to show a fraudulent intent on the part of the defendant, the conviction could not be sustained.    See opinion for facts held to be insufficient.    Following Stallings v. State, 29 Texas Crim. App., 220, and other cases.

Appeal from the District Court of Fannin.    Tried below before the Honorable Ben H. Denton.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Sherrill, Mulkey & Hamilton* and *Thurmond, Steger & Rayburn,* for appellant.—Upon question of want of fraudulent intent: Stallings v. State, 29 Texas Crim. App., 220; Eilers v. State, 34 Texas Crim. Rep., 344; Brace v. State, 43 Texas Crim. Rep., 48; Webb v. State, 8 Texas Crim. App., 310; Miers v. State, 34 Texas Crim. Rep., 161; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 Texas Crim. App., 12; Cesure v. State, 1 Texas Crim. App., 19; Dent v. State, 46 Texas Crim. Rep., 166; Dubose v. State, 10 Texas Crim. App., 230.

On question of burden of proof: Jones v. State, 13 Texas Crim. App., 1.

*John A. Mobley,* Assistant Attorney-General, and *McGrady & McMahon,* for the State.—On question of burden of proof and sufficiency of evidence: Bridgers v. State, 8 Texas Crim. App., 145; State v. Reinhardt, 26 Ore., 466; State v. Pierce, 77 Ia., 245; Boswell v. State, 127 S. W. Rep., 820; Davis v. State, 34 Texas Crim. Rep., 117; Hocker v. State, 34 Texas Crim. Rep., 359; Brewer v. State, 32 Texas Crim. Rep., 74; Evans v. State, 40 Texas Crim. Rep., 54; Caldwell v. State, 5 Texas, 18; Ashcroft v. State, 32 Texas, 108; Leonard v. State, 7 Texas Crim. App., 417.

McCORD, Judge.—Under an indictment charging appellant with embezzlement he was convicted in the court below and his punishment assessed at confinement in the penitentiary for two years. Hence, this appeal.

Appellant in the court below made a motion to quash the bill of indictment on the ground that it charged no offense; and, second, on the ground that the allegation in the bill of indictment to the effect that the money alleged to have been embezzled by him "had theretofore come into the possession of and was under the care of this defendant by virtue of said agency," was too general and that the word "theretofore" had an unlimited meaning, was but the conclusion of the pleader and not the statement of the fact and that from said allegation it would be inferred that the money came into his possession prior to the agency. Counsel has presented this question before this court in an ingenious argument and with some plausibility. We are, however, of opinion that the indictment is sufficient. It follows the form laid down by Mr. Willson in his forms which has been held good by this court in a number of cases. We see no reason why we should change the rule. We are, therefore, of opinion that the bill of indictment is sufficient and that it apprised the appellant of what he was called upon to meet.

From the statement of facts it appears that the firm of Wm. E. Affleck & Company, during the years of 1905, 1906, 1907 and 1908, was engaged in the cotton brokerage business; that the firm consisted of Wm. E. Affleck and W. C. Mortimore, brother of appellant. It seems also that this firm had an office at Greenville in Hunt County, Texas; that during the cotton season of 1905, and 1906, the appellant worked for said firm and that beginning with the cotton season of 1906, this company opened an office in Greenville, Texas, and made their headquarters at that point putting the appellant in sole charge of their office in Bonham, Texas, with instructions to buy cotton, pay for it with checks drawn on the Fannin County National Bank in Bonham with which said Affleck & Company had made arrangements for credit. Appellant's authority extended to running the Bonham office, employing help, paying the expenses of the office, salary of such employes as he needed, to keep the books of the Bonham office, go to the surrounding towns and gins and buy cotton as well as on the streets of Bonham. The facts further disclose that during the cotton season of 1906, and 1907, which began in September and ended practically in April of the following year, he purchased for said firm something like ten thousand bales of cotton, this cotton being bought in various lots from different parties, at gins, off the wagons, at other towns, etc., and that during said season for cotton he paid out one-half million dollars. The company seemed to have been so well pleased with the work of the appellant that they not only raised his salary each year but gave him a bonus. That the appellant continued to manage the business at Bonham until about March, 1908; that about this time friction sprang up between Affleck and his partner Mortimore. Affleck then went to the Bonham office and began to examine the accounts of appellant. As far as this record shows there had been no question up to this time made as to any mismanagement of the business on the part of appellant, either in using money of the firm, or in irregularities in keeping books. Affleck testified that in running over the checks that had been given out he found a check dated:

"No. 153.                              Bonham, Texas, Oct. 15, 1906.
     "Pay to the order of P. Lovelace $200 two hundred dollars.
                              "(Signed) WM. E. AFFLECK & Co.,
                              "Per pro, ROBERT W. MORTIMORE.

The witness further testified that on the lower left hand margin is writing in ink " on a/c 4 B/S." And on the left hand margin is printed, "Wm. E. Affleck & Co. Cotton." This check did not show that it had ever been paid by the bank or had ever passed through the bank. When the appellant's attention was called to this check by Affleck, he stated that it was a "dummy" check and represented a check that had been given by him to Lovelace for $200 for four bales

of cotton about the 15th day of October, 1906, and that in running over the checks he found that this check had become lost and that he put the check in there sometime thereafter to cover this amount. The bank shows an item of $200 paid out on that day, 15th day of October, 1906. Affleck further testified that at that moment he became very angry and denounced the appellant in unmeasured terms, calling him a damn thief and other vile names. He says that the defendant stated that that money went for the payment of cotton and that if Affleck was not satisfied he was willing to give his note subject to an investigation. Some testimony was introduced on the part of the State to the effect that the exact amount of $200 would not cover any four bales of cotton purchased; that Lovelace on that date, 15th day of October, 1906, had not sold four bales of cotton to the appellant. This is practically the testimony for the State. No evidence was offered to show that the bank account did not balance. No evidence to show that Affleck was in any way short on cotton; no evidence that shows that any amount of money belonging to Affleck & Company in the bank had been misdirected or misused by the appellant; no other check or other matter was questioned except this check. During the seasons of 1906 and 1907; and 1907 and 1908, the proof shows, defendant bought as much as 20,000 bales of cotton (buying it from wagons as they came into town, buying it at gins, buying it at neighborhood towns and that he had absolute control of Affleck & Company's bank account, of the management of the business; that he paid out during this time over a million dollars; that he gave checks reaching into the thousands and the record fails to disclose any transaction of this defendant other than this check that was questionable. It is seriously contended in this case that the State has wholly failed to make out a case against the appellant. The court is of opinion that appellant is correct in this contention. It would be remarkable indeed, if the appellant could have been able to pick out any particular check or receipt or evidence of the payment of a small amount of money and be able to explain it accurately, when first questioned with reference to it, and it would be most remarkable if the appellant in this case could be able to give an accurate explanation of this piece of paper under the circumstances under which the explanation was demanded. Affleck, his employer, was standing over him denouncing him as a thief and a scoundrel and he then trembling under excitement was called on to go over transactions involving a million dollars and to give an explanation not only that should be correct, but would be satisfactory to his employer. To make such a demand would be unreasonable and to hold that because his statement of the matter was not accurate, under the circumstances, and that it is consistent with guilt, would be a contradiction of every known rule set up by frail humanity for its guidance, it would be making that wholly consistent with the man's innocence, a circumstance to establish his guilt. We are not willing that a citizen shall be incarcerated on the testimony as disclosed in this record. We are

therefore of opinion that the testimony is insufficient and for this reason the case should be reversed. There is wholly wanting any testimony of fraudulent intent. See Stallings v. State, 29 Texas Crim. App., 220; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 Texas Crim. App., 12; Eilers v. State, 34 Texas Crim. Rep., 344.

There are other questions raised in the record which we do not deem necessary to notice. For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied October 12, 1910. Reporter.]