### W. P. CARDEN v. THE STATE.

No. 658.   Decided June 1, 1910.

**Murder—Charge of Court—Self-Defense—Threats.**

Where, upon trial of murder, there was evidence of self-defense, accidental killing and threats, and the court in his charge submitted the issue of threats upon an accidental killing, the same placed a limitation upon the defendant's rights of self-defense and was reversible error, especially where a proper charge on the issue of threats had been requested. Following Jackson v. State, 15 Texas Crim. App., 84, and other cases.

59 TEXAS CRIMINAL REPORTS.

Appeal from the District Court of Travis. Tried below before the Hon. George Calhoun.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for manslaughter with a penalty of three years confinement in the penitentiary.

On the trial of the case the appellant testified that on the evening of the killing he had gone into the saloon of General Hamby, in the city of Austin, and there for the first time met the deceased, with whom he was not acquainted; that some words passed, the deceased abusing him; that he went out of the saloon, leaving in the saloon Mal Reeves, who had accompanied him in there; that after he had left the saloon Mal Reeves came to him bloody and crying and stated that the deceased had horsewhipped him and thrown a pistol on him and accused him of giving appellant a knife, and that the deceased told Reeves that he, deceased, would kill the appellant the first time he bobbed up in front of him; that while he and Reeves were talking his brother came along and invited him to go to the saloon and take a drink; that he had been told that the deceased had left Hamby's saloon, and that when he went in with his brother he did not know deceased was in there, and that when he spoke to deceased about denouncing him the deceased threw his hand to his hip pocket as though to draw a weapon and appellant drew his weapon and shot. He further testified, however, that his pistol was a double-action pistol and that he drew it on the deceased to prevent him from drawing his pistol, and that it went off accidentally and killed deceased. Appellant's brother testified substantially as did appellant as to the movements of the deceased at the time the shots were fired, which indicated that the deceased was attempting to draw his weapon. Reeves took the stand and testified that he did not tell defendant anything about deceased horsewhipping him, and did not tell defendant that the deceased threatened to kill him. The court submitted the case to the jury upon murder in the first and second degrees, manslaughter and on provoking the difficulty. Also on self-defense and accidental killing.

In the motion for new trial no complaint is made of the charge of the court, but complaint is made at the refusal of the court to give in charge to the jury the rights of the defendant to act where threats to take his life by the deceased had been communicated to him. This charge was refused. Paragraph 28 of the court's charge on the

right of defendant to defend himself against the appearances of danger that threatened death or serious bodily injury reads as follows: "If the jury believe from the evidence in this case that when the defendant went to Hamby's saloon at the time of the difficulty he had been informed and believed that the deceased had left said saloon, and the jury further believe from the evidence in this case, viewing it from the standpoint of the defendant, W. P. Carden, at the time, that, immediately before the killing of the said George Stanford by the said defendant, the said Stanford advanced on the defendant and made a demonstration as if to draw a weapon, and from the manner and character of said demonstration (if any), and from the defendant's knowledge of the character and disposition of the deceased from the threats (if any), the deceased had made against the defendant, the defendant was caused to have a reasonable expectation or fear of death or serious bodily injury, and that the defendant, acting under such reasonable expectation or fear and while such reasonable expectation or fear continued, pulled his pistol and pointed the same at the deceased, with the intention of protecting himself, and that while said pistol was pointed at said deceased the defendant accidentally pulled the trigger of said pistol and thereby caused the discharge of said pistol and by reason thereof shot and killed the deceased, or if you have a reasonable doubt as to said facts, then you will acquit the defendant, although you may believe from the evidence that the deceased in fact had no weapon at such time and that the defendant was in truth in no danger from an attack by the deceased." By an inspection of this charge it will be seen that the court did not direct the jury that if the defendant shot and killed the deceased they would acquit, but that if he drew the pistol in self-defense and it was accidentally discharged they would acquit. If the defendant had been informed that deceased made threats against his life and by some act done at the time of the killing which manifested an intention to execute the threat and the defendant fired and killed the deceased, the court should have directed an acquittal, if the jury so believed. Therefore, was not this charge as given by the court a limitation upon the rights of the defendant? The jury were told that if the defendant drew the pistol in self-defense, and that they might consider the question of threats in connection therewith, and the pistol was accidentally discharged and killed deceased they would acquit, but did not tell them if he drew the pistol in self-defense and shot the deceased they would acquit. The defendant requested the following charge: "You are further instructed that if the witness Mal Reeves told the defendant W. P. Carden before the shooting that the deceased, Geo. Stanford, had threatened to take the life of the defendant, that even if the deceased, Geo. Stanford, had in fact made no such threats, but that if the defendant believed from what he was told, if he was told, by the witness Mal Reeves, that if said Geo. Stanford did any act or

made any movement toward said defendant, viewed from the defendant's standpoint, taking into consideration all things that had previously passed between the deceased and the defendant, which led the defendant to believe that such threat was about to be executed and that defendant drew his pistol to protect himself and killed the deceased, Geo. Stanford, or if you have a reasonable doubt of this you will acquit the defendant and say by your verdict not guilty." This charge was refused. The court had submitted the issue of threats upon an accidental killing. This placed a limitation upon the defendant's rights that ought not to have been done and in view of this limitation it was very important that the defendant should have had a clear charge upon the subject of threats submitted to the jury for their determination. It is no answer to this proposition to say that Reeves denied communicating the threats; it is no answer to the proposition to say that the story of the defendant was unreasonable. It was an issue made in the case that under the laws of Texas the jury had to pass upon and it was not within the power of the court to prevent the jury from passing upon the issue. This court in the case of Jackson v. State, 15 Texas Crim. App., 84, says, quoting from Reynolds v. State, 8 Texas Crim. App., 412: "The defendant is entitled to a distinct and affirmative presentation of the issues arising upon his evidence, in order that the jury may not be induced to ignore his defenses upon the supposition that the court did not deem them of sufficient importance to justify consideration, and for a further reason that without such presentation the jury are in no condition to make an intelligent selection of the law which should govern them in case they should find that the defendant's evidence was true. It may often happen that the testimony in defense has been fabricated, and that so inartistically as to bear upon its face an air of improbability or actual untruth; but even then the court is not relieved from the duty of considering it in framing its charge, as it is the right of the defendant to have its truth or falsity determined by the jury, and not by the court, in the first instance." Now, suppose the jury had believed that there were threats made; suppose that the jury had believed that the deceased at the time of the killing did some act manifesting the intention to execute the threat. Under the charge as given this could not have been considered by the jury as a defense if they found that the killing was not accidental. They must find that the killing was accidental before they could consider the defensive matters. Therefore, it made it important and essential that the special charge requested should have been given, and for this reason the case will have to be reversed. We think the bills of exception in the record are without merit, but for the reason above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*