## G. M. Nesbitt v. The State.

### No. 1511. Decided February 14, 1912.

**1.—Embezzlement—Indictment—Statutes Construed.**

Where, upon trial of embezzlement, under article 940, Penal Code, the indictment followed approved precedent, the same was sufficient.

**2.—Same—Value—Evidence—Check.**

Upon trial of embezzlement, under article 940, Penal Code, there was no error in admitting testimony on the question of the value of the property alleged to have been embezzled, and that the alleged check was drawn upon money actually in bank, introducing said check in evidence.

**3.—Same—Evidence—Conversion.**

Where the indictment under article 940, Penal Code, charged the fraudulent embezzlement and conversion of a certain check, there was no error in introducing testimony that the defendant deposited said check in the bank, receiving credit on his account.

**4.—Same—Evidence—Other Transactions.**

Upon trial of embezzlement, under article 940, Penal Code, it was reversible error to admit evidence as to other transactions not connected with the case, such as the amount of defendant's general indebtedness and his failure to pay it.

**5.—Same—Evidence—Intent—Other Transactions.**

Upon trial of embezzlement, under article 940, Penal Code, evidence which tended to show whether defendant had authority or believed he had authority to use the alleged check, was admissible, but testimony of extraneous transactions, which would only show his intention to repay the amount alleged to have been embezzled, or his financial ability, were inadmissible.

**6.—Same—Impeachment—General Reputation.**

Where defendant had introduced evidence to impeach the State's witness, there was no error to admit testimony as to the latter's general reputation for truth and veracity.

Appeal from the District Court of Coryell. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of embezzlement under article 940, Penal Code; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. P. Sadler,* for appellant.

*C. E. Lane,* Assistant Attorney-General, and *J. R. McClellan,* District Attorney, for the State.—As to question of conversion: Leach v. State, 81 S. W. Rep., 733; Busby v. State, 51 Texas Crim. Rep., 289, 103 S. W. Rep., 638.

HARPER, JUDGE.—Appellant was indicted under article 940 of the Penal Code, in one count, it being alleged that he being a private person, one H. L. Smith, did instruct and deliver to him a check for $60 to be deposited in the Farmers National Bank at Gatesville, Texas; that defendant failed to deposit said check in said bank and did fraudulently embezzle and fraudulently convert to his own use the said check. In another count it is alleged that defendant appropriated the money received on said check. Appellant did not move to quash the indict-

ment, but after announcement for trial, objected to the introduction of any evidence on the ground that the indictment alleged no offense under the laws of this State. The indictment in this case is drawn in accordance with the form laid down in White's Penal Code (section 1632) and is in accordance with the decision of this court in Nasbitts v. The State, 36 Texas Crim. Rep., 5, 34 S. W. Rep., 957, and the court did not err in admitting evidence thereunder.

In this case the State's evidence would show that H. L. Smith had money on deposit in the Gatesville National Bank and appellant was a stockholder in the Farmers National Bank, and appellant solicited the prosecuting witness to change and do business with the Farmers National Bank. This was after banking hours, and when Smith agreed to do business with the Farmers National Bank, appellant suggested to him to give him a check and he would deposit for Smith next morning when the bank opened. He did not deposit the check to Smith's account, but deposited it to his (appellant's) account, and used the money himself. The State proved by Smith that he had the money on deposit in the Gatesville National Bank at the time he gave the check, to which appellant objected. Article 940 provides that if one intrusted with property to be carried and delivered by him to some other person, shall embezzle or fraudulently convert to his own use such property, he shall be deemed guilty of theft and shall be punished as is prescribed for that offense. The indictment alleged the check to be of the value of $60. If Smith had no money in the bank the check would have been of no value, and as it is necessary to prove that the property embezzled or converted had some value, and its value must be at least $50 to constitute a felony, there was no error in admitting this testimony on the question of the value of the property.

The State offered the check in evidence given by Smith to Nesbitt, and described in the indictment. In this there was no error, and the objections stated in the bill are not tenable.

Leake Ayres testified that he was an officer in the First National Bank and that appellant deposited the check to his (appellant's) credit, at that bank, saying, "I have the original deposit slip showing that the Smith check was deposited to defendant's credit for the amount of $60." The witness further testified that after depositing the check, appellant gave A. R. Williams, cashier of the bank, a check for the amount and it went to the credit of one of appellant's notes. Defendant objected to this testimony on the ground that the indictment alleged "an appropriation of the proceeds of the check, to wit, $60 in current money of the United States, and that the testimony shows he received no money," and other objections stated in bills three and four. The first count in the indictment alleged conversion of the check, and the second the proceeds of the check, and there was no error in admitting the testimony. Defendant, in his testimony, admitted that he had deposited the check to his credit, and had checked it out the same day and had the amount credited on a note due by him, giving a new note for the

remainder due. Neither was there error in permitting the witness to testify that "Nesbitt (appellant) received the proceeds of the check, or received the money in the way of credit on the note that he owed the bank." The first count in the indictment alleges that appellant did "fraudulently embezzle and fraudulently convert said check to his appellant's own use and benefit," and this evidence would be admissible under this allegation.

Davis Trout, a witness for defendant, had testified that the prosecuting witness Smith had told him that he had let appellant have a check, and appellant had collected and used the proceeds, and that appellant had told him, Smith, about it, and he had told appellant it was all right provided he paid it back in a few days. On cross-examination he was permitted to testify as shown by bill of exceptions: "We were talking about Hall and Freeland and it finally drifted to this check. Smith asked me if I knew what Hall and Freeland intended to do, and said that he had a conversation with Hall and proposed to Hall that for him and Freeland and Hall to go together and indict Guy in one bill, and maybe that could do more with him, and in that conversation he said something about having to sell his buggy and team to pay off two notes for about $500 which he had gone on for defendant." Various objections were urged to this testimony, and it was error to admit. The prosecuting witness had testified that he signed the two notes, and appellant was guilty of no offense in failing to pay them, and it was calculated to prejudice the jury against him to admit testimony that the person who signed the notes had to sell his buggy and team on account of default of appellant.

These two notes had no connection with the transaction for which appellant was being prosecuted, and no criminal charge would lie in that transaction. It was also error to admit testimony that in his dealings with Hall and Freeland that he had also committed a crime. Appellant was on trial for conversion of a check and appropriating the proceeds and the testimony should have been limited to evidence bearing on that transaction.

Again, in bill No. 11, appellant complains of the following proceedings: "While the defendant C. M. Nesbitt was on the stand testifying in his own behalf, on cross-examination by the State, the court permitted the State to prove by the witness, over the objections of the defendant, as follows: 'I would not swear to what I owed at the time I got the check from Smith, because I did not keep an itemized account. I was in debt, but I don't know how much. Yes, I owed the First National Bank principal and interest about $2,800 to $3,000. I will state that my indebtedness aggregated something near $5,000, and probably more. At the time I got that check from Smith, nor at any other time did I make known to him my financial condition.

"Q. What property did you have at the time? The court: 'At the time he gave the check he can answer.' Q. Is it not a fact that the only property you owned at the time was an interest in a farm out here

at Coryell City, for which you sold to your father for $2,000 of notes?
A. No, sir, I had some horses. I could not tell you how many. I had
one I know. It was here in Gatesville. That is all the property I
had, the interest in the farm that I sold my father and this one horse.
I had some town property in west Texas. I do not remember what I
paid for the west Texas property. I bought those lots a good while
before that. They were worth $250. The horse was worth $200. I
had a half interest in the business. I hardly know what kind of an
asset you would call it. I had just bought in with Wells the right to
do business. I do not recall what I did have at the time. Q. Accord-
ing to your own testimony, you owed $5,000 and you had not over
$2,500 worth of property. A. My land was worth more than that. It
was 48 acres of land. I sold my interest in this land in the following
August or September to my father for $2,000 and took notes strung
out for ten years. According to my own statement I owed $5,000 or
$6,000 and had on hand about $2,400 worth of assets. I did not make
known at the time I got this check anything about my financial condi-
tion. It was not mentioned.'

"To all of which testimony the defendant at the time objected be-
cause same was immaterial and irrelevant, and could serve no other
purpose than to prejudice the jury against the defendant, and was not
material to elucidate or explain any issue before the jury."

What property the defendant owned, or the amount of his debts was
not an issue in the case, neither was the fact that he had failed to pay
his debts. The only issue was, did the prosecuting witness authorize
appellant to use the check as testified to by himself, or did he embezzle
and convert it without the consent of Smith? If he did fraudulently
convert it, he was guilty of an offense, and the good faith of appellant
in his promise to repay the amount would not render it less a crime,
in fact, if he had repaid the amount, if he fraudulently converted
property to his own use when intrusted to him to be delivered to an-
other, it would be no defense that he intended to repay it. This evi-
dence would not tend to shed any light on whether he was guilty of
conversion of the check or not and should not have been admitted in
evidence. This ruling also applies to the letter written by appellant to
Mrs. Smith, dated Hereford, Texas, Feb. 27, 1909, and the testimony
relating to the $2,000 land notes, recited in bills Nos. 11 and 12. It
would be immaterial whether Smith was to have been paid out of these
notes a year after the check is alleged to have been converted, or whether
appellant intended to pay him out of the proceeds of these notes. As
hereinbefore said, if when pressed, appellant had paid the amount, the
crime, if a crime, had been committed, and paying the money back
would have been no defense. The letter throws no light on whether
appellant was guilty of conversation or not, it only would have a bear-
ing on whether appellant intended to repay the amount he had ob-
tained by reason of his use of the check. The letter of appellant to
his brother, and the agreement of C. R. Nesbitt with reference to these

land notes should not have been admitted in evidence. Both of these instruments, the letter and agreement, are dated long subsequent to the cashing of the check and use of the money by appellant, and would not aid the jury in passing on the question of whether he had authority of Mr. Smith to use the check at the time he did appropriate it. The letter wrote by appellant to Miller & Morgan wherein he states: "When he gave me the check for the money, and I used it, I told him about the matter in less than a week after he gave me the check," is admissible in evidence, as it tends to show whether or not Smith gave him authority to use the check, or appellant thought he had authority to use it. The letter written to Mr. Smith, dated "Herefore, March 24," wherein appellant states: "You know what I have done has been as intentionally honest as anyone could do, etc. I have meant no wrong or desired to beat you or anyone out of one cent," is also admissible, or so much thereof as relates to the $60 transaction, and would aid the jury in passing on whether appellant did or did not have authority to use it at the time he used it.

It was not error to permit the State to introduce testimony to support its witness Smith, after appellant had introduced testimony to impeach him, and it was admissible to prove his general reputation for truth and veracity in this state of the record.

There are a number of other bills of exceptions in the record but we do not deem it necessary to pass on each separately as we think we have made it clear that all evidence which tends to show whether or not appellant had authority to use the check, or believed he had authority, is admissible in evidence, but evidence of these extraneous transactions happening long after the check was used by appellant, and which would only tend to show his intention to repay the amount, or his financial ability, are inadmissible. It would be immaterial if appellant was solvent or insolvent if Mr. Smith authorized him to use the check.

For the errors above pointed out the judgment in this case is reversed and the cause is remanded.

*Reversed and remanded.*