## F. E. Pye v. The State.

### No. 2448.   Decided June 25, 1913.

Rehearing denied December 3, 1913.

**1.—Embezzlement—Indictment—Description of Instrument.**

Where, upon trial of embezzlement of a note, the same was described in the indictment "One vendor's lien note for the payment of $8000, and of the value of $8000," the same was a sufficient description of the note, and there was no error in overruling a motion to quash. Davidson, Presiding Judge, dissenting.

**2.—Same—Evidence—Value—Appropriation.**

Upon trial of embezzlement of a note, there was no error in admitting testimony to prove that after the finding of the indictment, the maker of the note was sued upon another note which was given. to get the note in question from the party holding it, and that said maker had to pay $500 as a result of the judgment rendered on the suit against him. Davidson, Presiding Judge, dissenting.

**3.—Same—Evidence—Consent.**

Upon trial of embezzlement of a note, the court erred in not admitting testimony to show consent of the maker of the note and that the dealing between the parties was such as to lead to the belief that the defendant had the maker's permission to use the note as he did. Following Taylor v. State, 50 Texas Crim. Rep., 377, and other cases.

**4.—Same—Charge of Court—Fraudulent Intent—Temporary Appropriation.**

Where, upon trial of embezzlement of a note, the defendant claimed only a temporary appropriation of the same, but the testimony showed that the defendant had hypothecated the note and thus placed it beyond his control, and that the maker of the same had to substitute another collateral to secure the release of the note, the issue of temporary appropriations was not thereby raised, and there was no error in the court's failure to submit such issue. Davidson, Presiding Judge, dissenting.

**5.—Same—Additional Instructions—Innocent Holder—Notice.**

Where, upon trial of embezzlement of a note, the court recalled the jury and gave them additional instructions as to innocent third parties without notice, etc., there was no reversible error. Davidson, Presiding Judge, dissenting.

**6.—Same—Knowledge of Defendant—Consent—Charge of Court.**

Where, upon trial of embezzlement of a note, the issue was raised that the maker of the note knew at the time that the defendant appropriated the same that he did so; and that the dealings between the parties was such as to lead the defendant to believe he had the maker's permission to use the note as he did, this issue should have been submitted to the jury.

Appeal from the Criminal District Court of Harris.   Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Lane, Wolters & Storey* and *E. T. Branch* and *McDonald & Meachum,* for appellant.—Cited cases in opinion.

*C. E. Lane,* Assistant Attorney General, and *Richard Maury,* District Attorney, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged in the first count with the theft of one vendor's lien note for the payment of eight thousand dollars and being of the value of eight thousand dollars; and in the second count charged with embezzlement of the note.

The indictment is attacked because it does not sufficiently describe the note. The indictment charges in both counts the note to be, "One vendor's lien note for the payment of eight thousand dollars and of the value of eight thousand dollars." It is contended the indictment is not sufficient in that the description of the note was not as demanded by the terms of the law. The indictment does not undertake to allege by whom the note was executed nor the date of its execution, nor the date of its maturity, nor the date when it was made payable, nor to whom it was payable, nor upon what land or property the vendor's lien was held, nor in what county it was situated, nor any attempt to describe the property or house or land, nor the county in which it was situated, nor the place where the note was payable, nor any matters of description which would enable appellant to plead a conviction thereon in bar of a subsequent prosecution for the same alleged offense. The case of Calentine v. State, 50 Texas Crim. Rep., 154, decides this question in favor of appellant's contention. This case was followed in Patrick v. State, 50 Texas Crim. Rep., 496. Under those authorities we are of opinion this indictment is not sufficient. Thus far these cases have not been overruled, and in the opinion of the writer ought not to be. They announce the correct doctrine. This note was before the grand jury evidently, or could have been, because it was used on the trial of the case. They could have given such a description of the note as would have identified it from other notes and so identified it as to show the very note upon which the prosecution was based as by giving some description of it that would individuate it. This was not done, and the grand jury failed to allege in the indictment that a better description than that alleged could not be given or ascertained. Therefore, under these authorities we think this indictment is insufficient. Appellant was convicted and given two years for embezzlement.

A brief statement of the facts perhaps may be necessary. Mr. Goree, an attorney for the Washington County Bank, had in charge for collection an indebtedness for seven thousand five hundred dollars against the Shelp Rubber & Supply Company, of which appellant was guarantor. Goree was about to bring suit on said indebtedness, and appellant asked him to hold off, that is, not to do so, whereupon Goree demanded that he, appellant, give him additional guarantee. Appellant thereupon turned over to him, in order to prevent the bringing of the suit, a vendor's lien note for eight thousand dollars, signed by one Hill, and payable to L. H. Perry, and endorsed by Perry, and which note was the note claimed to be embezzled. Perry testified that he had turned over this note and quite a lot of other notes to appellant, on which he was

to borrow money for him, Perry, and that appellant subsequently reported to him that this note was lost. He returned the other notes to Perry. Perry also testified when he heard the note was lost that he had Hill to execute another note, on its face the same as the original, and that on this duplicate note borrowed money from J. N. Taub, a merchant of Houston. Shortly after Mr. Taub ascertained that Goree held the other note, which was identical with his. He called on Perry to get the other note out of the way, and Perry and appellant went to Goree, and appellant gave Goree another note which was endorsed by Perry, and the note which was the subject of this indictment was then turned over to Perry by Goree and canceled. Mr. Taub testified that Perry knew of the existence of the note in Goree's hands when he spoke to him, and that Perry did not appear to be surprised when he told him, and that the note was purely accommodation paper, and that he, Taub, held the first lien on the property which overcovered the value of the property.

The evidence shows that the maker of the note, Hill, was a carpenter, working for three or three and one-half dollars a day, and that he gave the note for eight thousand dollars to Perry on which there was a prior lien that practically covered the value of the property. Perry testified that it was a bona fide sale, and that he afterwards returned to said Hill the land paid by Hill as a first payment, and that the first lien was not released when Hill gave the note, while the other evidence was that the note was an accommodation paper and given without consideration by Hill in order to enable Perry to borrow money thereon, and that the note had already been assigned to Mr. Taub and was of no value. Perry testified that he did not give his consent to appellant to put up the note with Goree, but appellant testified that Perry would usually let him do anything he wanted with the collateral and when the note was surrendered back to Perry by Goree that Perry was perfectly satisfied at that time, and that the note was not worth a cent. Appellant's testimony was that, being guarantor in favor of the Washington County Bank, he deposited the note temporarily with Goree, in order to prevent Goree from suing him at that time, and that he only put up the note temporarily, without any intention either to permanently appropriate it or to cause Perry any loss or to defraud Perry; that he knew that the note was a mere accommodation note and of no value, and that Mr. Hill told him so, and would not go on the stand and deny that it was an accommodation paper, and that he knew that Mr. Perry had not sold the property and that the duplicate note had already been assigned to Mr. Taub and the note was of no value, and that Perry would usually let him do anything he wanted to do with the collateral, and that when the note was surrendered to Perry by Goree that Perry was perfectly satisfied, and that the note in the first place was not worth a cent and was a second lien note. Goree testified that when he surrendered the note to Perry and received the note of appellant endorsed by Perry that Perry was apparently satisfied and made no claim that appellant had stolen his note. Mr. Taub testified that Perry knew of the existence of the note in Goree's hands when he spoke to

him about it, and that Perry did not appear to be surprised when he told him. Mr. Taub further testified that if his first lien was enforced that there would be very little, if any, value of the note.

The evidence further discloses that Perry had sold or mortgaged the land which it is sought to show was connected with this note, or rather there was a debt over that land for thirteen thousand dollars, and that the property was situated in Houston, and was not in fact worth more than ten thousand dollars, if that. The thirteen thousand dollars indebtedness hanging over it and this eight thousand dollar note created on this property, worth less than ten thousand dollars, an indebtedness of twenty-one thousand dollars.

The State was permitted, over objection of appellant, to prove that after the finding of the indictment in July in this case, Perry was sued on the note given to get the note in question from Goree and had to pay five hundred dollars as a result of the judgment rendered on said civil suit. It seems, however, appellant paid the five hundred dollars. There was testimony that there had been other dealings between appellant and Perry in which accommodation paper figured. As we understand this record this property on which all this indebtedness of twenty-one thousand dollars was created was subsequently after getting rid of this accommodation lien, sold by Perry at eight thousand dollars. This may be perhaps sufficient statement of the case to review some or all of the questions. The five hundred dollar note paid by Perry on the judgment was really paid by appellant, or at least Perry was paid the five hundred dollars by appellant.

Appellant offered to prove by Perry that he was not out anything on the note itself, and by appellant that the witness Perry never had him arrested or made any complaint about his having used the note in question to prevent the suit being filed against appellant, and that Perry seemed entirely satisfied with his conduct in the matter when he endorsed the substitute note put up by him to secure the return of the note in question, which testimony was excluded by the court. We think, without stating the reasons for which this was offered, this testimony should have gone to the jury. Taylor v. State, 50 Texas Crim. Rep., 377; Jenkins v. State, 34 Texas Crim. Rep., 201; Farrar v. State, 29 Texas Crim. App., 250; Stanton v. State, 42 Texas Crim. Rep., 269.

The State was permitted to show, over objection of appellant, that four months after the indictment was presented that Perry had to pay five hundred dollars in cash, in order to be released from his obligation on the substituted security given to Goree, the objection being that same was subsequent to the finding of the indictment and was proof of acts between other parties, and that same was prejudicial to defendant as showing a loss by Perry subsequent to the presentment of the indictment, and was proof of a judgment in the civil court. It is claimed this evidence was hurtful on the issue of value, and acts done by other parties after the presentment of the indictment could not bind or make a note, valueless at the time of the supposed conversion, become of value, and same was liable to mislead the jury. It is contended by appellant

that this proposition is elementary. He cites Nesbitt v. State, 65 Texas Crim. Rep., 349, 144 S. W. Rep., 944; Hatfield v. State, 67 S. W. Rep., 110; Richardson v. State, 46 Texas Crim. Rep., 83. We are of opinion that this contention of appellant, under the authorities, is correct. This was long after the transaction, and if there had been any conversion it was at the time that appellant took the note for his own use. The value of the note was to be determined by its standing at time of conversion. The law fixed that status at that time. The rule is fundamental that in order to constitute theft or embezzlement, the fraudulent intent and conversion must coincide, that is, in theft the fraudulent intent must exist at the time of the taking. If a party is charged with embezzlement or theft by conversion, then fraud must exist at the time of the conversion. Appellant, of course, after the testimony was admitted, had to meet it the best way he could, but this did not cure the error of its admission. The authorities are all one way on this proposition.

Again appellant requested the court to give the following instruction: "The gist of the offense of embezzlement is the fraudulent intent, and before you can convict the defendant you must believe from the evidence, belond a reasonable doubt, that the embezzlement, misapplication or conversion, if any there was, was done with a fraudulent intent, and if defendant had the intention to merely temporarily use the vendor's lien note in question, without any intention to defraud or if you have a reasonable doubt as to this, then you should acquit the defendant." This is properly reserved in both ways, by bill of exceptions and in motion for new trial. The contention of appellant is that this charge was demanded by the evidence and was the defendant's defensive theory and called the court's attention to the necessity of presenting a correct and affirmative charge on his defensive theory, and the court having omitted in his main charge to give any charge presenting his defensive theory, the refusal to give this charge was prejudicial error and should be held to be sufficiently so to be reversible. The bill of exceptions sets out the contention of the parties. We are of opinion this charge should have been given. Appellant testified that his intention was to use the note only temporarily and without any idea of defrauding Perry; that he knew the note was of no value, and was an accommodation note, which was corroborated by other testimony, and nowhere did the court affirmatively present his defensive theory. It is fundamental proposition that wherever a defensive theory is presented by the record, the defendant is entitled to a distinct and affirmative presentation of that issue in order to prevent the jury from ignoring his defense and conduct them to a proper verdict if they find his evidence to be true or there was a reasonable doubt of it. See the following authorities: Reynolds v. State, 8 Texas Crim. App., 412; Greta v. State, 9 Texas Crim. App., 429; Jackson v. State, 15 Texas Crim. App., 84; White v. State, 18 Texas Crim. App., 57; Burkhard v. State, 18 Texas Crim. App., 599; Irvine v. State, 20 Texas Crim. App., 12; Bond v. State, 23 Texas Crim. App., 180; Smith v. State, 24 Texas Crim. App., 290; Williams v. State, 24 Texas Crim. App., 342; Thompson v. State, 24 Texas Crim.

App., 383; Dones v. State, 8 Texas Crim. App., 112; Erwin v. State, 10 Texas Crim. App., 700; Ainsworth v. State, 11 Texas Crim. App., 339; Neyland v. State, 13 Texas Crim. App., 536; Bonner v. State, 29 Texas Crim. App., 223; Nalley v. State, 30 Texas Crim. App., 456; Hays v. State, 30 Texas Crim. App., 472; Carter v. State, 30 Texas Crim. App., 551; Hargrove v. State, 33 Texas Crim. Rep., 431; Wheeler v. State, 34 Texas Crim. Rep., 350; Wright v. State, 35 Texas Crim. Rep., 470; Carver v. State, 36 Texas Crim. Rep., 552; Winters v. State, 37 Texas Crim. Rep., 582; Taylor v. State, 50 Texas Crim. Rep., 377; Mortimore v. State, 60 Texas Crim. Rep., 69; Carden v. State, 59 Texas Crim. Rep., 501, 129 S. W. Rep., 362; Campbell v. State, 37 Texas Crim. Rep., 572; Treue v. State, 44 S. W. Rep., 829; Strickland v. State, 47 S. W. Rep., 720; Driver v. State, 48 Texas Crim. Rep., 20; Golightly v. State, 49 Texas Crim. Rep., 44; Freeman v. State, 52 Texas Crim. Rep., 500; Cain v. State, 49 Texas Crim. Rep., 360, 68 S. W. Rep., 175; Sowell v. State, 32 Texas Crim. Rep., 482; Henderson v. State, 1 Texas Crim. App., 432; Harris v. State, 51 Texas Crim. Rep., 564; Scott v. State, 70 Texas Crim. Rep., 57, 153 S. W. Rep., 871.

Appellant testified that he had no intention of defrauding Perry or permanently depriving him of the note; that he thought he would use it temporarily and return it to him when necessary; that Hill had told him it was an accommodation note; he knew it was an accommodation paper; that Perry had not sold the property; that he deposited the note with Mr. Goree simply to get temporary relief; that the note was of no value. There is evidence not only by appellant but other testimony to the effect that the note was an accommodation note. It seems to be uncontroverted, shown by the State as well as defendant's evidence, that the property for which this note was given had an existing debt hanging over it for thirteen thousand dollars. This note was for eight thousand dollars, and the value of the property covered by these liens was ten thousand dollars or less. It was in evidence that Hill was a carpenter, employed by Perry at three dollars and fifty cents a day, and that Hill executed this note to Perry for this eight thousand dollars on the property above mentioned. Appellant testified he had it from Hill that it was an accommodation note, and he knew as a matter of fact himself it was an accommodation note. Appellant testified and some of the facts we have already detailed show he was sustained to some extent in stating he was only temporarily using the note with Goree to prevent Goree bringing suit against him in favor of the Washington County Bank, and the evidence further shows that he was financially pressed at the time, and that a suit at that time might be of very serious consequences to him, and by using this note he could temporarily stave off litigation and in the meantime gather his financial matters together and relieve some of his outstanding paper or property and take up and substitute the note with Goree in place of the note he used with Goree. In all cases where it was an issue as to whether the property was used temporarily or converted permanently, it is the duty of the court to submit the issue to the jury. It is further the rule under all the cases,

so far as we are aware, that where the property is only temporarily used and not a permanent deprivation, then it would not be theft and if the jury believed defendant's side of the case under such circumstances, he would be entitled to an acquittal. The court charged the State's side of it but refused to give the defendant's side of it. A list of some of the authorities bearing upon the temporary use will be found collated in Branch's Criminal Law, section 798. On the question of intent see Branch's Criminal Law, section 779. In Taylor's case, 50 Texas Crim. Rep., 377, in regard to this phase of the law, this court said: "Where the State seeks a conviction, whether under the general statute of theft or under that of making the conversion by bailee theft, fraudulent appropriation and the intent to deprive the owner of the property must exist at the time of the taking, or at the time of the conversion, as before stated. Under the general statute the fraudulent intent is co-existent with the taking. Under the statute in regard to conversion by the bailee, it must coincide with the act of conversion. Under both statutes the fraudulent intent to appropriate permanently must necessarily exist. If appellant borrowed the money on the ring with the intent and purpose to redeem the ring, this would seem to exclude the idea of a fraudulent intent to permanently deprive the owner of the property, if not of a fraudulent intent altogether." In the case of Carden v. State, 59 Texas Crim. Rep., 501, the same doctrine was laid down in regard to threats, although they were denied, yet the defendant was entitled to a charge submitting his theory of the case.

In Freeman v. State, 52 Texas Crim. Rep., 500, appellant testified to a certain state of facts, which statement was contradicted by prosecutrix. The court failed to charge with reference to appellant's defense, which was that his intention was not to assault the girl, but merely to secure from her the ring. The court said in that case: "This was appellant's affirmative defensive theory and one he supported by his testimony. We are of the opinion this charge should have been given. It is fundamental in this State that the charge must distinctly set forth the law applicable to the case, and this must be determined by the evidence adduced. . . . It is further a fundamental proposition of law that the charge must embrace the law applicable to every phase of the case made by the evidence and from legitimate deduction to be drawn therefrom. . . . The fact that the evidence may be such as the court may believe untrue will not change this rule. Under our system the jury constitute the judges of the facts, credibility of the witnesses and the weight to be given their testimony. It is also equally as well settled in this State that the accused is entitled to a distinct and affirmative, and not merely an implied or negative, presentation of the issues which arise upon his evidence, in order to prevent the jury from ignoring his defense, and to conduct them to a proper verdict if they find this evidence to be true." Taylor v. State, 50 Texas Crim. Rep., 377; Cain v. State, 49 Texas Crim. Rep., 360; Dyerle v. State, 68 S. W. Rep., 174; Sowell v. State, 32 Texas Crim. Rep., 492; Henderson v. State, 1 Texas Crim. App., 432; Harris v. State, 51 Texas Crim. Rep.,

564; White v. State, 18 Texas Crim. App., 57; Scott v. State, 70 Texas Crim. Rep., 57, 153 S. W. Rep., 871. It may not be necessary to cite further authorities on this proposition, at least it would seem to be unnecessary. The fraudulent intent at the time of the conversion is the gist of the offense, and in theft or embezzlement there must be a fraudulent intent to permanently and not temporarily take or convert the property. Taylor v. State, 50 Texas Crim. Rep., 377; Mortimore v. State, 60 Texas Crim. Rep., 69; Branch's Criminal Law, on temporary use, sec. 798; and on intent, sec. 779, for collation of other authorities.

After the jury had been out for about seventeen hours specifically mentioned in the bill of exceptions, they were recalled by the court and the following charge given:

"You are instructed that an accommodation note placed in the hands of an innocent third person, for value without notice, is just as binding and valid as if consideration had passed from the maker to the payee at the time the note was made and could be enforced against the maker and endorsers in the hands of innocent third persons without notice, just the same as though it was a bona fide transaction.

"You are further instructed that the original of a note that has been substituted in the hands of innocent third parties for value without notice, is a valid and binding obligation on the maker and endorser, although the maker may have executed a substitute for the original.

"You are further instructed that in arriving at the value of the note introduced in evidence you may take into consideration all of the facts and circumstances adduced before you, and that the question to be decided by you, as to the value of the note, is its value at the time the same was converted or misapplied by the defendant, if you find beyond a reasonable doubt that it was fraudulently misapplied or converted, and not its value at any subsequent time."

We are of the opinion the contention is correct that this charge should not have been given. There were many exceptions taken and reasons assigned why this charge was wrong. This charge presented only the theory of the State, and in our judgment more favorable to the State than it was entitled to have. The court by this charge made the criterion of value, so far as appellant was concerned, in the hands of innocent third parties, and absolutely eliminated all of his defensive theories, and it was a charge on the weight of evidence. It is a correct proposition of law that an accommodation note in the hands of innocent third parties is available, that is, it is not subject to the want of consideration, as it is in the hands of parties with notice of its character as an accommodation paper. There was evidence not only from appellant but from other sources adduced on the trial sustaining him to the effect that this was an accommodation paper, and that appellant knew it. Of course, the law is too well settled for discussion, that in the hands of the parties to the accommodation transaction the paper would be valueless. Appellant was the agent of Perry, one of the parties to the note, and for the double reason that he was agent for Perry and stood in his shoes in disposing of the paper, acting as his agent, and positively knew, at

least so testifies, that the paper was an accommodation paper this charge was erroneous. Whatever he did with the paper as the agent of Perry would be Perry's act. He stood in Perry's shoes, and so far as his holding the paper is concerned he was Perry's agent. If he had stolen Perry's note from Perry with knowledge of its want of value, he would not have stolen anything. If at the time he converted it it was valueless, he had not embezzled anything. It is sometimes a little difficult to fix upon a fact or the facts which show the fraudulent taking or conversion in embezzlement. But wherever that fact exists in embezzlement would be the conversion. If appellant converted it from Perry as the indictment charges, then he converted a paper that he knew to be an accommodation paper or believed to be an accommodation paper, and which the facts would justify the jury in believing was an accommodation paper. He converted it as the agent of Perry, therefore it was Perry's property when he converted it. He is not charged with swindling Goree, but is charged with embezzling Perry's property. The court's charge would indicate to the jury, and seems to have been to so instruct them that they should fix appellant's guilt, so far as the value of the paper is concerned, in the hands of Mr. Goree. The court does not even charge the converse of the proposition. Appellant, as before stated, was charged with embezzling Perry's property. He is not charged with embezzling it after it got into the hands of third parties, nor could they fix the criterion in the hands of innocent third parties as the criterion of value in the hands of Perry, for whom appellant was the agent and whose property he is alleged to have embezzled. Appellant did not obtain a cent and Perry lost nothing.

There is another question in this phase of the case. There is evidence all through the record that the note was valueless, and there is evidence of the fact that Mr. Perry virtually agreed to all appellant did and had knowledge of it. Taub testifies he apparently knew it and was not surprised when told of the condition of things, and Goree testifies to the same thing, and appellant testifies he thought it was all right with Perry; that he had been in the habit of handling Mr. Perry's collateral notes, and Perry did not express any surprise at it and went with appellant to Goree and executed with appellant another note and took up the eight thousand dollar note in question and canceled it. Goree said he canceled it. Perry testified that he canceled it. This charge, we think, is wrong from another standpoint. It fixes the value in the hands of innocent third parties and not in the hands of Perry through his agent, appellant. If appellant had stolen this note there is no question of the fact it would have been valueless, because he would have been stealing a paper from Perry that he and Perry knew at the time was valueless, and embezzlement is but a different form of theft; *at the time of conversion the property must have a value.* Appellant makes the contention that where the value is necessary to be alleged, it is necessary to prove and the evidence must show some specific value, and in this case the State has failed, in our judgment, to prove the value of the note, that it was worth fifty dollars or over, or in fact of any

value. We are of opinion that this contention is correct. We are of opinion that the passing of the note by appellant to Goree did not enhance the value of the note that belonged to Perry; it did not lend any value to Perry's alleged property. The passing of the note into the hands of Goree, conceding that he was not acquainted with the fact that it was an accommodation paper, might have created an obligation against Perry, but would hardly be thought to make the note available as Perry's property. The creation of an obligation against Perry does not constitute embezzlement. Appellant received no consideration for leaving the note with Goree, outside of an extension of time, or rather Mr. Goree's promise not to sue. There was no money passed; there was no value shown. Nothing had passed to appellant from Mr. Goree except a promise not to sue. Appellant simply had an extension of the debt for which he was guarantor; he received nothing which he could convert. If appellant had sold Goree the note for cash consideration and retained the money for his own use, he would not have been guilty of embezzling the note. He may perhaps have been guilty of swindling Mr. Goree or possibly of embezzling the proceeds of the note, but not of embezzling the note itself.

Appellant also makes another contention, which seems to us to be sound, that the State failed to prove that the note was ever of any value either in the hands of Perry, appellant or Goree. The facts show conclusively that Hill was insolvent. It would hardly be thought that any man with any business qualification and accountability financially would lend his name to Perry, as the record shows this man Hill did, under the circumstances. In fact it is shown that Hill was simply a carpenter working for wages at three dollars and fifty cents a day, and the circumstances show Perry was fully bankrupt and was floating fictitious loans in order to keep up his financial schemes. The security upon which the note was based was worth nothing so far as this note is concerned. While Perry said it was worth ten thousand dollars, yet it is shown, and by Perry himself, that there was a thirteen thousand dollar first lien upon it besides the eight thousand dollar note mentioned in the record, but his testimony goes to show that after he got rid of those accommodation liens he sold the property for eight thousand dollars. So it will be seen the property fell five thousand dollars short of releasing the first lien security. Mr. Taub testifies, from this record seems to be a responsible business man, that the note "was not worth eight cents, that it was worth nothing." Taub knew of the property and knew Perry and doubtless knew Hill; at least his testimony shows he was familiar with those transactions. Besides this testimony, all the circumstances of the case, even the evidence for the State, indicates but one safe conclusion, it occurs to us, that is, that the note upon any theory of this evidence from which it may be considered, was worthless, and the State instead of proving beyond a reasonable doubt any specific value of the note, absolutely disproved it. It may be Mr. Perry and Mr. Pye were running these matters together. The testimony rather indicates that Perry was indulging in some pretty extravagant financial transactions with-

out much backing to it, and that Pye was familiar, at least to some extent, with those facts, and that he had assisted Mr. Perry in these matters, handling his, Perry's collateral, and this accounts for the reason why Mr. Perry was not surprised at the transaction between Pye and Goree, and all these other matters that have cropped out in the evidence, and if those facts exist, the evidence would strongly indicate, from that standpoint, Pye had authority or was justified in believing he had authority to handle the property and do with it as he pleased. This phase of the case, however, was not submitted to the jury. Under all the circumstances of this case it may be a serious question whether the State has a case to show embezzlement by Pye of Perry's property of any amount, that is, that the note was valueless, and any conversion by Pye of a valueless piece of paper could not be embezzlement because of a want of value.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

HARPER, JUDGE.—While agreeing to the reversal of the case, I do not concur in that part of the opinion holding the indictment defective, but hold that the indictment is not invalid.

I do not agree that the court should have submitted the issue of temporary appropriation. The testimony shows that Pye hypothecated the note with Goree and placed it beyond his (Pye's) control, and Perry had to substitute other collateral to secure the release of the note owned by him and which Pye had appropriated to his own use, and think the evidence of Perry having to pay $500 was admissible on two phases of the testimony, first as tending to show the value of the $8000 note at the time of its appropriation, and, secondly, if there was any evidence tending to show a temporary appropriation, then this was a cogent circumstance to prove a permanent appropriation that Perry first had to put up other collateral to get the $8000 note appropriated by Pye released, and then to get this collateral released he had to pay $500. There are other matters that might be mentioned but agreeing with the conclusion reached, I concur in a reversal of the case, especially on the grounds that whether or not Perry knew at the time Pye appropriated the note and consented thereto, and, secondly, if the dealings between the parties were such as to lead Pye to believe he had Perry's permission to use the property, then this issue should have been submitted to the jury.

PRENDERGAST, PRESIDING JUDGE.—In my opinion the indictment . is good. I think the trend of all the later cases is to that effect. It seems to me from the statement of the case by Presiding Judge Davidson that it must be reversed. The time for adjournment for this term of court is so near at hand, and there being so much other pressing business necessary to be disposed of before adjournment, precludes a special study of this case now. At a later date, even if the reversal stands, we may

write further herein on the various questions arising and necessary to be decided herein.

It may be upon a thorough consideration we may reach the conclusion the case should not be reversed.

[Rehearing denied December 3, 1913.—Reporter.]

[This case did not reach hands of Reporter until June, 1914.—Reporter.]