(No. 21932.—

The People of the State of Illinois, Defendant in Error, vs. Hubert C. Moor, Plaintiff in Error.

*Opinion filed February 23, 1934.*

ALBERT E. ISLEY, and WILLIAM T. HOLLENBECK, for plaintiff in error.

OTTO KERNER, Attorney General, CARSON M. PURDUNN, State's Attorney, J. J. NEIGER, SAMUEL M. SCHOLFIELD, and CHARLES W. HALLECK, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error in the circuit court of Clark county was found guilty by a jury of the murder of his wife, Marjorie Moor, and his punishment fixed at death. His defense was insanity. He brings the cause here for review, assigning error in the rulings of the court on admission of evidence and instructions to the jury.

Marjorie Moor was killed early on the morning of August 15, 1932, at a point on the highway about six miles south of Marshall, Illinois. She was shot twice through the heart with a revolver. On August 13, 1932, Moor and his wife drove to Indianapolis to visit their parents. On Sunday, August 14, they attended church there in the

morning and met at the home of his parents for dinner. That afternoon they drove from Indianapolis to Greencastle, where they called on friends, leaving that place about 11:00 o'clock that evening. Early on the morning of August 15 Moor went to a farmhouse near the place where his wife was shot, told the family he had been robbed, slugged and left by the road, and that his wife and his car were gone. Officers were notified and Moor was questioned. Conflicting stories by him caused his arrest. Later he made a confession and took the officers to the place where he had hidden the gun. Moor and his wife each carried a life insurance policy, the other being named as beneficiary. In his confession, which was introduced in evidence over the objection of his counsel, he stated that when he and his wife reached a point in the highway about six miles south of Marshall each got out of the car; that his wife re-entered the car and placed a folded blanket on the back of the front seat as a pillow, preparatory to sleeping; that Moor went to the left side of the car, drew his revolver and shot her twice in the region of the heart; that he drove back toward Marshall, hid the revolver in a hole in the ground near a fence-post and then drove south to the point of the shooting, where he left the car and went to the farmhouse, aroused the family and told them he had been robbed and slugged, as we have stated. He was put on the stand at the trial and testified, in substance, as above stated.

The defense is that Moor was suffering from partial insanity, known as dementia præcox, paranoia type. He had had difficulty with the school board where he was teaching and with his wife. It is argued that her neglect of the home and her failure to meet his idea of home life, together with numerous letters which she had written and which were sought to be introduced in evidence, were all circumstances contributing to his mental condition. Nine witnesses, including two physicians, testified that they be-

lieved him insane. Eighteen witnesses, five of whom were physicians, testified that in their opinion he was sane.

Moor had been educated in the common schools and in Butler College, in Indiana, and had studied at the University of Illinois, specializing in agriculture and chemistry. He taught four years in the high school at Robinson, Illinois, and in the summer of 1932 attended summer school at the University of Illinois, taking work in advanced chemistry. This work he had completed a day or two before the homicide. He and his wife had met while they were attending Butler College. After their marriage she preferred teaching and outside work, while he insisted upon her making a home and bearing and rearing children. She was interested in outside club work and church activities. He, likewise, had been active in church work. He had suffered from arthritis, which caused him some difficulty in retaining his position as teacher in the Robinson schools during the last year. He was put on the witness stand and testified that his wife neglected her housekeeping and permitted the house to become extremely untidy, which very much embarrassed him when friends came to their home. She kept numerous dogs and cats in the house. They were permitted to dirty up the place and she did not clean it up; that when he was ill she left medicine within his reach and left the house; that she wrote numerous letters that he saw and also received several from another man, which she left where he could see them, and that those things worried him. He told in his testimony of having dreams which would worry him, and that these occurred a month or so apart. He also in his testimony told of the shooting.

It is most earnestly argued that it was error to refuse to admit a number of letters, some of which were identified as being in the wife's handwriting and the others were typewritten and signed by her. It is urged that these letters are competent as evidence of conduct on her part

tending to contribute toward his mental condition. The testimony shows that these letters had been left about the house where he could read them, and that he had read them. Some of them had been written to her parents, others to his parents, and others were letters written by another man to her. Some of the letters were quite lengthy and evidenced a marked lack of compatibility between them. Expressions in some of them evidence doubt in her mind as to his mental soundness. One was a letter written to him and left where he could read it, excoriating him for his selection of a friend. Another was presumably written to some other woman charging her with illicit relations with plaintiff in error. Those to her parents detailed their lack of compatibility at great length. The admission of these letters was objected to by the People on the ground that they were hearsay, and the objection was sustained on the ground, as shown by the ruling of the court, that the only question to be considered was whether the accused was sane or insane, and not the question of what might have produced the insanity.

In a case such as the one before us, where the defense to the crime charged is insanity and where there is evidence in the record tending to establish such a condition, facts which might cause or aggravate such condition are always competent. It is possible that in the case of one whose mind is diseased the receipt of information causing mental unrest, whether such information be true or not, might well have a tendency to increase mental disorder and further unbalance the mind. Such evidence, therefore, becomes proper as tending to show an aggravation of the mental condition, and it is proper to show the effect of the receipt of such information. (*People* v. *Phipps,* 268 Ill. 210; *People* v. *Casey,* 231 id. 261; *Nordgren* v. *People,* 211 id. 425.) In a case of the character before us, where the jury is permitted to fix the punishment and where the defense is insanity, it is important that the jury

hear all evidence which might produce the condition sought to be established by the defense.

No specific rules can be laid down as to the kind or character of circumstances which may excite uncontrollable impulses, and it is competent to show statements, written or spoken, which came to the knowledge of the accused before the time of the commission of the crime charged and which may reasonably be said to have had some bearing on his mental condition at the time the crime was committed. Such evidence, when offered for the purpose of showing the mental condition of the accused, is not to be considered as hearsay, since the question of the truth or falsity of such statements is of no importance. The question is whether it may be seen to have been in any measure a contributing cause to the mental condition of the accused. (1 Greenleaf on Evidence, (16th ed.) sec. 100; *People* v. *Casey, supra.*) We have read the letters sought to be introduced in evidence, and without expressing opinion as to their sufficiency to cause or aggravate a diseased mental condition, if there was such a condition, in the plaintiff in error, we have no doubt that they were not only competent to be introduced in evidence in the attempt of the defense to show such mental condition but that it was prejudicial error to deny their admission in evidence.

It is urged that it was error to admit the written confession of plaintiff in error. The record shows that no undue influence, force, threats or promises were used to obtain the confession, but counsel for plaintiff in error argue, and cite authorities in support, that the confession of one insane is not a voluntary confession and therefore does not come within the rule. Whether the accused in this case was sane was the primary issue in the case, and the court could scarcely deny the admission of the confession on the ground that the accused was insane at the time it was made unless there were circumstances in evidence which do not appear here that the insanity occurred after

the time of the commission of the crime, for had the court refused admission of the confession on such ground it would have amounted to a finding on that issue before the jury. Furthermore, plaintiff in error's counsel placed him on the stand and he testified concerning the homicide. The defense was that he was insane at the time of the homicide and at the time of the trial, and it is scarcely consistent to say that his mental condition was such as to render his confession incompetent and at the same time put him on the witness stand as competent to testify. It was not error to admit the confession in evidence.

Certain instructions are complained of, as is the refusal of other instructions offered by the defense. The first one of the former told the jury that to constitute a defense, unsoundness of mind or affliction of insanity must be of such a degree as to create an uncontrollable impulse to do the act charged by overriding the reason and judgment and obliterating the sense of right and wrong as to the particular act done and depriving the accused of the power of choosing between right and wrong. This instruction was clearly erroneous. The mere ability to distinguish between right and wrong is not the correct test in cases of this character where the defense is of that type of partial insanity known as paranoia, but the accused, to be guilty, must be capable not only of knowing right from wrong as to the particular act, but he must also be capable of exercising the power to choose between them and to act according to his choice. If it appear that either the knowledge of right and wrong or the ability to choose between them is lacking, the accused cannot be convicted of the offense charged. (*People* v. *Krauser,* 315 Ill. 485; *People* v. *Lowhone,* 292 id. 32; *People* v. *Penman,* 271 id. 82.) Counsel for the People call attention to instruction No. 2 given for the plaintiff in error, which states the law correctly, and say, therefore, that no harm was done by giving the People's instruction complained of. It

has been frequently recognized by this court that where one instruction correctly states a principle of law and another states that principle incorrectly, it is impossible to say, in a case where the evidence is conflicting, which instruction the jury followed. (*People* v. *Strause,* 290 Ill. 259; *People* v. *Harvey,* 286 id. 593; *Enright* v. *People,* 155 id. 32.) The evidence in this record as to the mental condition of the plaintiff in error is conflicting, and in that state of the proof it was essential that the jury be accurately instructed as to the law and that the record be free from prejudicial error. *People* v. *Cochran,* 313 Ill. 508; *People* v. *Scott,* 284 id. 465.

The fourth instruction given for the People is also objected to. By it the jury were in effect instructed, as a matter of law, that it is not necessary that the *corpus delicti* be established beyond a reasonable doubt by evidence other than the confession. The rule is well established that the *corpus delicti* may not be established by confession, and this instruction was erroneous in its clear implication. It resulted in no injury, however, as there was no question about the proof of the *corpus delicti.* It was admitted.

Instruction 10 is also complained of as instructing the jury, in the language of the statute, pertaining to the duty and authority of the court in case the jury should find the accused insane. The jury have nothing to do with that matter, and this court has consistently held that instructions of that character should not be given. *People* v. *Garippo,* 321 Ill. 157; *Hornish* v. *People,* 142 id. 620.

Other instructions are properly complained of as ignoring the defense of insanity. This court has so frequently condemned instructions of the character of those here complained of, that it seems unnecessary to lengthen this opinion by further commenting upon them.

As this case must be again tried for the errors indicated, we have avoided commenting upon the weight or

the effect of the evidence admitted or offered. That is a matter lying within the province of the jury.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*