THE STATE OF WYOMING

*Plaintiff and Respondent*

vs.

CHARLES DITZEL,

*Defendant and Appellant.*

(No. 2727; June 4th, 1957; 311 Pac. (2d) 961.)

234

For the defendant and appellant, the cause was submitted upon the brief and oral argument of Vincent Mulvaney, Cheyenne, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of George F. Guy, Attorney General, Howard B. Black, Deputy Attorney General, Arthur E. Fisher, Ellen Crowley, Bruce P. Badley, Assistant Attorneys General of Cheyenne, Wyoming; oral argument by Walter B. Phelan, County and Prosecuting Attorney of Laramie County, Teno Roncalio, Deputy County and Prosecuting Attorney of Laramie County, and Ellen Crowley.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of the court.

Criminal complaint was filed against Charles Ditzel, charging that defendant "acting in a fiduciary capacity, did, without good cause, fail and refuse, when legally required by proper persons, to account for and pay over to such persons as were lawfully entitled to receive the same, property which came into his hands by virtue of his fiduciary capacity * * *".

This wording of the charge conforms to the language used in § 9-328 Wyoming Complied Statutes 1945, which calls such conduct "embezzlement". The information to which Ditzel entered his plea of not guilty upon which he was tried and convicted was in the identical language of the complaint.

One of the two principal questions for decision is, whether there was prejudicial error in refusing to allow the accused to answer questions about consent or approval being given him by the representative of

the entruster to use the entrusted funds in the manner defendant claimed he had done.

The other question is, whether our statutory crime of embezzlement is sufficiently charged when couched in the words of the statute which has omitted the words "unlawfully and feloniously".

The defendant was in the real estate business and as incident thereto he also engaged in certain financing activities. This included doing business with Kassler & Company, a mortgage banking concern which provided at least a portion of the financing defendant's business required. The complaint charging the defendant with embezzlement grew out of this relationship with Kassler & Co. and was signed by E. S. Kassler, Jr., the president of Kassler & Co. The home office of the company was in Colorado but it operated a part of its loaning business outside the city of Denver through certain employees who appeared to be its representatives. In negotiating loans from Kassler & Co. it was the practice of the defendant to forward the necessary applications to the company's Denver office and that office, in turn, sent to the defendant "closing statements" together with its checks or drafts for the amounts of approved loans. However, one of the company's representatives, a Mr. Buntin, was the only person connected with Kassler & Co. who had any personal contact, and who alone had transacted any company business with the defendant. Seemingly to facilitate these business transactions, Mr. Buntin was provided with keys to defendant's business office and was given free and full access to all of the defendant's books, papers, records and business effects. Evidently from time to time the defendant used those monies in various other ways, instead of applying monies re-received by him from Kassler & Co., in the manner di-

rected by the closing statements. When called upon to account for these monies, the defendant was therefore unable to show that he had applied the same in accordance with the directions contained in those closing statements. This resulted in his being prosecuted for the crime of embezzlement under the provisions of our statute.

At the trial the defendant was asked on three different occasions if the diversion of the funds placed in his hands, from the purposes originally directed, was done with the approval of Kassler & Co. or with the approval of Mr. Buntin, its representative. Objection was made by the state to these questions upon the grounds that such testimony would be hearsay. The court sustained the objections on that theory. These rulings were clearly erroneous.

The probative force of the defendant's proffered testimony relative to any approval which may have been given him to use the entruster's money in the way he claimed it was used, would have depended solely upon the defendant's own credibility and could have been subjected to the assaults of cross-examination as well as to rebuttal by contradictory evidence. The defendant was as entitled to testify to the spoken words, statements or directions given by third persons which he claimed motivated his conduct as he would have been to describe physical conditions, acts, or circumstances which explained what he did. More especially, where the words, statements or directions purport to come from a source having the right of control of the subject matter in dispute such testimony is admissible.

The point is rather well illustrated in Little v. State, 119 Ark. 430, 178 S.W. 374, 375, where the defendant in a larceny case maintained he took the property with

the owner's permission. The court held it was error to exclude testimony that the owner had given the permission, saying: "* * * This was not in the nature of hearsay testimony, but was evidence tending to prove a substantive fact, to wit, the permission of the owner for appellant to take the cultivator, which was a very material fact; for, as is shown, the gist of the offense of larceny is that the property must be taken with a felonious intent. * * *" Additionally the court said: "* * * The testimony was as competent in this form as if it had been testified to, either by the owner of the property himself or by the *appellant.* * * *" (Emphasis supplied.)

In this case, the gist of the statutory offense is that the defendant "without good cause" failed to account and pay over funds coming into his hands in a fiduciary capacity. The exclusion of his testimony relative to any approval given to the way in which he used the funds, denied him opportunity to show that he had the best cause and the best reason there could be for his not complying with the demand to account and pay over the trust funds, if he was prepared to say the funds had already been applied in a manner previously approved by the owner. See also Buchanan v. United States, 8 Cir., 233 F. 257, 259; Miller v. United States, 10 Cir., 120 F.2d 968; Haigler v. United States, 10 Cir., 172 F.2d 986; Frank v. United States, 10 Cir., 220 F.2d 559, 563, 564; Vol. 6 Wigmore on Evidence 3rd Ed. § 1789, p. 236; Walker v. State, 117 Ala. 42, 23 So. 149, 152; 3 Underhill's Criminal Evidence 5th Ed., § 576, p. 1421; 1 Underhill's Criminal Evidence 5th Ed., § 54, pp. 94, 95, § 162 p. 296; Pye v. State, 74 Tex. Cr R 322, 171 S.W. 741; Nesbitt v. State, 65 Tex. Cr R 349, 144 S.W. 944, 946, 947.

As indicated by its wording, an element of our statutory crime of embezzlement by fiduciaries is that

the accused "without good cause" did fail and refuse to properly account for and pay over the entrusted property or money. When the court denied the defendant an opportunity to testify concerning approval to apply the money in a manner different from that which had been originally directed, which may have been given him by the company or its representative, he was deprived of his right to show the jury that his failure to account was with "good cause". It was the jury's province to determine what, if any, weight should be given to the defendant's testimony on that score, just as it was the state's privilege to rebut or refute it, if that could be done. The exclusion of such testimony served to deprive the defendant of a substantial and vital right and was therefore prejudicial.

With respect to the second question, appellant says, the absence from the information of the words, "unlawfully and feloniously", results in a failure to charge the commission of any offense against the laws of this state. The prosecution replies, that as the information is in the words of the statute, that of itself makes it sufficient and, in any event, the criminality of the acts or the criminal intent implied by the words "unlawfully and feloniously", is sufficiently charged by other words included in the statutory language.

As this question has been considered, discussed and settled in Waxler v. State, 67 Wyo. 396, 409, 410, 411, 224 P.2d 514, 518, where it was held that a charge in the language of the statute was sufficient, we must hold this contention of the defendant to be without merit.

For the error in excluding relevant and competent testimony offered in behalf of the defendant by which ruling we find he was prejudiced, the judgment and

sentence of the court is reversed and the cause is remanded to the district court for a new trial.

Reversed and remanded for new trial.

## ON PETITION FOR REHEARING

(No. 2727; August 20th, 1957; 314 Pac. (2d) 832.)

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of this court.

The state has filed its petition for rehearing. The grounds relied on are much the same as the points and arguments previously advanced in resistance of the defendant's appeal. They will not again be considered.

It is also claimed we disregarded a long established rule and substituted our judgment for that of the trial court. This contention indicates a failure to recognize that the reversal in this case was due to error of law rather than disagreement with the court's determination of facts. We reversed because the lower court erroneously denied defendant an opportunity to have proper evidence submitted to the jury. No assumption was made as to what answers the defendant would have given. We merely held that defendant had the *right* to testify relative to any approval given him by the entruster and that such testimony would not be hearsay.

Petitioner also says the defendant failed to make an offer of proof, and, therefore, the exclusion of the evidence was not reversible error. This overlooks

the rule that when the nature of expected testimony, otherwise clearly appears, an offer of proof is unnecessary. In this case the questions left unmistakable the subject matter of the expected testimony irrespective of the answers being of an affirmative or negative character. See 88 C.J.S. Trial §§ 73, 75, pp. 179, 180, 181; 53 Am. Jur. § 101, p. 90, together with authorities cited.

The reason for the rule which ordinarily requires an offer of proof in order to preserve objection to the improper exclusion of valid evidence is the necessity of apprising both the trial and the reviewing court of the competency, relevancy and materiality of the expected evidence. However, where this is disclosed by the interrogation itself the reason for the rule disappears.

The exclusion of the evidence by the lower court on the ground that it would be hearsay, plainly shows the court misconceived the law with respect to its competency. Such an exclusion does not indicate the court was unaware of the nature of the expected testimony or of its relevancy or materiality. Under these circumstances, the reason for the rule requiring an offer of proof is not present and hence an offer was not required.

Counsel cite several cases from this State as supporting its position, namely, Jenkins v. State, 22 Wyo. 34, 58, 134 P. 260, 135 P. 749, where the record gave no indication that the question was material; State v. Rouse, 58 Wyo. 468, 477, 134 P.2d 1116; State v. Boner, 42 Wyo. 36, 40, 41, 288 P. 13; and State v. Goettina, 61 Wyo. 420, 448, 158 P.2d 865, in each of which cases

the interrogation did not disclose the nature of the expected testimony. The State also cites McGinness v. State, (McGinnis v. State) 4 Wyo. 115, 122, 31 P. 978, 53 P. 492, where it was said, a proffer should be made of what the question would elicit except where the witness was excluded as incompetent, thus indicating the question itself had not done so. None of these cases touch upon the important point presented here where the witness was competent and the very nature of the question itself showed that, as a matter of law, the expected testimony was competent testimony and would be relevant and material to the issues involved.

In addition, we have carefully examined Wyoming Inv. Co. v. Wax, 45 Wyo. 321, 339, 18 P.2d 918; Cooley v. Frank, 68 Wyo. 436, 451, 235 P.2d 446; and Watson v. Klindt, 73 Wyo. 402, 280 P.2d 282, where failure to make offer of proof was held to be fatal, but none of these cases present a situation such as that before us, where the questions objected to, sufficiently advised the court of the nature of the expected testimony. Its admissibility as evidence depended solely upon whether the witness was competent to repeat what if any direction or approval was given him by the entruster or its representative. As a matter of law this testimony was not hearsay but direct evidence.

Attention might also be called to Casper Motor Co. v. Marquis, 31 Wyo. 115, 119, 223 P. 764, 765, where the court referred to the exception to the rule made in McGinnis v. State, supra, and also pointed out that "other exceptional circumstances might require a modification of the rule * * *".

Rehearing denied.