[Crim. No. 7178. In Bank. Nov. 16, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN MARSH et al., Defendants and Appellants.

Bertrand L. Comparet for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Defendants Marsh, Crane and Bateson were charged with attempted grand theft, conspiracy to commit grand theft, and conspiracy to violate section 2141 of the Business and Professions Code, the section prohibiting the practice of medicine without a license. They were convicted of all three offenses. Defendant Bateson has not appealed. Marsh and Crane appeal from the judgment of conviction and from the order denying their motion for a new trial.

The trial was a protracted one. The prosecution produced substantial evidence that defendants, none of whom possessed a medical license, worked together to obtain money from the sick and the neurotic on the false representation that the electric machines they possessed could cure almost any ailment. Most of the vital evidence was secured by undercover agents of the Food and Drug Administration, and is in the form of tape recordings of conversations between the defendants and the agents. This evidence, because of its nature, is uncontradicted. The prosecution evidence is overwhelming that such representations were made, that they were false, and that money was obtained from various persons based on such representations. Although the defendants denied that they "sold" their machines, and claimed that they only loaned them, and that the payments were donations to their foundation, or rental for the use of the machines, or for instruction in how to use them, the evidence also shows that the form of the transaction

was a mere subterfuge to avoid a charge of sale by the Food and Drug Administration. The amount secured from users of the machines varied between $175 to $2,000. It was usually exacted in the form of a ''donation'' to defendants' nonprofit organization for the ''loan'' of the machines. The evidence also shows that the $175 machine was identical in design with a device used commonly by radio and TV repairmen that retails for $49.95.

The first two counts of the indictment—attempted grand theft and conspiracy to commit grand theft—admittedly grew out of a connected series of transactions. In each instance, obtaining money by false representations is the form of theft relied on by the prosecution, and the case was submitted to the jury on that theory. ▇▇ Under section 484 of the Penal Code an essential element of that offense is that defendant had the specific intent to defraud. (See *People* v. *Simms,* 144 Cal.App.2d 189, 194 [300 P.2d 898].) Under this section, even if the defendants made false representations but made them in the bona fide belief, based upon reasonable grounds, that they were true, no offense was committed. ▇▇ In other words, a conviction of theft based on false representations cannot be sustained if the false representations were made in the actual and reasonable belief that they were true. The burden of proof on this issue is on the prosecution (*People* v. *Ashley,* 42 Cal.2d 246, 264 [267 P.2d 271]). ▇▇ It follows, as a matter of course, that a defendant is entitled, in such a case, to introduce proper evidence that tends to establish that he did not, in fact, possess the intent required by the code section. Such evidence may be introduced either to controvert the evidence produced by the prosecution, or to establish affirmatively the lack of the required criminal intent. It is elementary that if the prosecution can introduce evidence of a required specific intent, the defendant must be given the equal privilege of showing the lack of such intent (*People* v. *Becker,* 137 Cal.App. 349, 352 [30 P.2d 562]).

▇▇ In the instant case the conspiracy, the making of the false representations, and the obtaining of money by the defendants was proved by overwhelming evidence. The defendants' defense was twofold: (1) That the representations were true in that the machines possessed the curative powers represented, and (2) that even if the representations made were false they were believed by defendants to be true; that they were based upon certain reports received from certain doctors and scientists; that reliance on such reports was rea-

sonable. The first defense was clearly refuted by the prosecution. The evidence demonstrates that the representations were false. The main point involved on these appeals relates to the second defense—good faith reliance. In this connection, defendants properly produced some 15 witnesses who testified that the machines in question had in fact cured them of various ailments. The defendants were also permitted to testify that they relied on various reports of named scientists and doctors. But defendants were consistently prohibited from introducing into evidence the contents of the reports and conversations had with the doctors and scientists about the curative powers of the machines. In offering such evidence, defendants' counsel clearly stated to the trial court that he was not offering this evidence in the form of conversations, reports and letters to prove that the machines could cure, but was offering it solely to show the information the defendants relied upon in forming their belief that the machines could cure. While the trial court did permit defendants to testify that they had conversations with and had received communications from doctors and others commenting on the effectiveness of the machines, the trial court consistently excluded on objection of the prosecution the introduction of the contents of these conversations and communications on the ground that they constituted inadmissible hearsay. The fundamental basis of the trial court's rulings in this respect is shown by its statement that "you can't use hearsay to balance a man's judgment, that is what we have the rules of evidence for. . . . There is no way that the prosecution could possibly cross-examine on the authenticity, the veracity or the qualifications of the person making the report, that is the reason for the rule."

These rulings were clearly erroneous, and under the circumstances, prejudicial. ■ The gist of hearsay is that it is an out-of-court utterance offered to prove the truth of what is asserted in the utterance. ■ But here the evidence was offered not to prove the truth of the statements, but to show the mental state of the defendants, i.e., that they believed the machines did cure. Such letters, reports, and conversations offered for such purpose are not hearsay and are admissible. McCormick, Evidence (1954) states the proper rule as follows, at pages 464-465 : "When it is proved that D made a statement to X, with the purpose of showing . . . the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of ·X, the evidence is not subject to attack as

hearsay." ▮▮▮ Wigmore says, "Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned." (6 Wigmore, Evidence (3d ed. 1940) p. 235. See also 1 Wharton, Criminal Evidence (12th ed. 1955) p. 591, "The question is merely whether they had any effect upon the mental state of the defendant.")

California is in accord with this general rule. Thus, it has consistently and properly been held that the statements a police officer relies upon to make an arrest are admissible against hearsay objections, not to prove the truth of such statements, but to show the officer's state of mind (probable cause) in making the arrest. (*People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967] ; *People* v. *King*, 140 Cal.App.2d 1, 5 [294 P.2d 972] ; *People* v. *Paul*, 147 Cal.App.2d 609, 618 [305 P.2d 996].) In *People* v. *Vogel*, 46 Cal.2d 798 [299 P.2d 850], it was held that the defendant's good faith belief that he was divorced at the time of his second marriage was a good defense in a bigamy prosecution. It was there held to be prejudicial error not to admit defendant's testimony as to what his first wife had told him.

*People* v. *Rosson*, 202 Cal.App.2d 480 [20 Cal.Rptr. 833], is also in point. There a conviction of grand theft was reversed because the trial court improperly excluded evidence of a witness's efforts to return the automobile involved at defendant's request, which testimony if admitted and believed would have negated the specific intent required of the crime. The excluded testimony was held not to be hearsay.

In *Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 220 [331 P.2d 617], it was held that an out-of-court conversation concerning a previous accident was admissible to show that the defendant had knowledge of a dangerous condition. Also in point is the case of *Smith* v. *Whittier*, 95 Cal. 279 [30 P. 529]. One of the issues in that personal injury action was the defendant's knowledge concerning the dangers connected with an elevator. This court held that the defendant could be asked to repeat conversations he had had concerning the elevator's operation. At page 293 the court said that this out-of-court conversation was not "within the rule which excludes hearsay. . . . If the fact sought to be established is, that certain words were spoken, without reference to the truth or falsity of the words . . . the testimony of any person who heard the statement is original evidence, and not hearsay."

There are many cases from other jurisdictions on the point under discussion. Only a few need be mentioned. In *Frank* v. *United States,* 220 F.2d 559, defendant was charged with using the mails to defraud. The defense was that the defendant believed that his oil-finding machine actually worked, and that the defendant did not knowingly make false statements concerning the efficacy of his machine. To establish this defense defendant attempted to introduce tests he had made and reports from others concerning his machine. This was excluded. The federal court reversed the conviction, holding that the exclusion of this evidence was erroneous. "The statements said to have been made to Frank by third parties were not offered to prove that such statements were true but as tending to show that Frank was led thereby to believe that the magnetic logger could be relied upon. Evidence of this character is not objectionable as hearsay." (220 F.2d at pp. 563-564.)

In *State* v. *Ditzel,* 77 Wyo. 233 [311 P.2d 961], an embezzlement case, the court held it was reversible error for the trial court to exclude evidence offered by defendant as to what his employers told him to do with the allegedly embezzled property. This went to negating the intent required for the crime and was not hearsay.

*Rand* v. *Commonwealth,* 176 Ky. 343 [195 S.W. 802] involved a theft from the state accomplished by false pretenses. The court held that various documents were admissible as evidence bearing on the defendant's good faith in receiving money from the state. If defendant believed he was entitled to the money then he did not have the knowledge of the falsity of his representation, and there could be no criminal conviction for false pretenses. The court held that "whatever tends to show good faith on the part of appellant or want of good faith upon his part is competent evidence to go to the jury." (195 S.W. at p. 809. See also *State* v. *Sherman,* 183 Iowa 42 [166 N.W. 674, 679-680] [letters admissible] ; *State* v. *Rivers,* 58 Iowa 102 [12 N.W. 117, 120] [records and account books admissible] ; *State* v. *Chingren,* 105 Iowa 169 [74 N.W. 946] [conversations].)

In *Zenik* v. *O'Brien,* 137 Conn. 592 [79 A.2d 769], a malicious prosecutions action, the pivotal question was whether the defendant's belief in plaintiff's guilt was reasonable. The court held that conversations defendant had heard were admissible to show on what he formed his opinions as to the plaintiff's guilt. (See also *State* v. *Bixby,* 27 Wn.2d 144

740

[177 P.2d 689]; *Bryant* v. *State,* 191 Ga. 686 [13 S.E.2d 820, 825] [statute]; *People* v. *Moor,* 355 Ill. 393 [189 N.E. 318].)

It is true that defendants did not offer to authenticate these letters, reports and conversations. This was not significant. The due execution of the proffered testimony was not involved. The issue was, did defendants receive this material, and if so what effect, if any, did it have on their minds. As was said in *People* v. *Adamson,* 118 Cal.App.2d 714, 720 [258 P.2d 1020], referring to a letter offered to show motive or intent: ''The authenticity of the letter would seem to have no bearing on its intended use. Whether it be genuine or a forgery, it was merely offered to show that Mr. Pugh was motivated by it in his actions.'' (See also 7 Wigmore, Evidence (3d ed. 1940) pp. 574-575.)

█ Thus error was committed in excluding the proffered evidence. This error was emphasized because the instructions given by the trial court correctly told the jury that defendants' defense was a good faith belief in the curative powers of the machines, but the rulings on the admissibility of evidence prevented the introduction of the very evidence defendants relied on to support their contention of good faith belief. Thus the jury was instructed, ''To constitute the crime of theft by obtaining property by false pretense, the false pretense must be a fraudulent representation of an existing or past fact by one who knows it not to be true, *or who makes the representation recklessly and without information justifying the belief that it is true. . . .*''[1] (Emphasis added.) The jury was then instructed:

''In determining whether a representation was made with knowledge of its falsity, or recklessly, you must taken [*sic*] into consideration any evidence showing what information the defendant making such representation had and on which he relied in making such representation. . . . [I]f the defendant did believe this information and believed his representations to be true, then such defendant cannot be found guilty of either attempt to commit grand theft or conspiracy to commit grand theft based upon the making of that representation.

Thus, although the jury was correctly told that the defendants were only guilty if the representations made were not

---

[1] *People* v. *Cummings,* 123 Cal. 269, 271-272 [55 P. 898]; *People* v. *Davis,* 112 Cal.App.2d 286, 298 [246 P.2d 160]; and *People* v. *Schmitt,* 155 Cal.App.2d 87, 109 [317 P.2d 673], establish that the representation need only be a reckless one, made ''without information justifying a belief that it is true'' to attribute knowledge of its falsity to the defendants.

only false, but were made either recklessly or without information on which the defendants could reasonably base a belief that the machines were efficacious, and were also told to consider the information upon which the defendants relied in forming their belief, the trial court, by its rulings on the admissibility of evidence, excluded from the jury's consideration the very evidence that defendants relied upon to show their defense of good faith belief. This, under the facts, was the key defense of the defendants. By those rulings they were precluded from offering the basic evidence that may have supported this defense. Under such circumstances, in spite of the overwhelming nature of the evidence on the other elements of the offense, article VI, section $4\frac{1}{2}$, of the Constitution cannot cure the error. The error went to the very heart of the basic defense. By excluding this evidence the court quite effectively took from the jury the determination of the only real issue in the case—the determination of defendants' good faith belief in the truth of their representations. This was their main defense. The fact that the court permitted defendants to testify that they relied on these reports, letters and conversations, did not serve to obviate or alleviate this error. By the exclusion of this testimony defendants were precluded from putting before the jury the basis of their claimed belief. The content of these representations were thus basic to the defense. This was what was excluded. Thus, the convictions for attempted grand theft and conspiracy to commit grand theft must be reversed.

But this analysis does not apply to the conviction under count 3 of the indictment, conspiracy to violate Business and Professions Code section 2141.[2] A good faith belief in the efficacy of their machines does not constitute a defense to this charge. As to this charge the questions were: was there a conspiracy; did defendants treat patients as part of that conspiracy; were defendants without a license? All of these elements of the offense were proved by overwhelming evidence. There were errors, and rather serious ones, in connection with

[2]Section 2141 provides that, "Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor." Of course, the charge of conspiracy to commit this misdemeanor is a felony. (Pen. Code, § 182.)

this charge, but in view of the overwhelming nature of the evidence it is not reasonably probable that such errors affected the judgment.

The trial court was in error in instructing the jury on what constituted the necessary criminal intent to constitute a conspiracy to violate section 2141 of the Business and Professions Code. The court gave the following instructions on this issue:

"Criminal intent is present whenever a person knowingly and voluntarily performs an act or acts which the law declares to be a crime. It does not require a knowledge that such conduct is wrong and may even exist in the presence of a belief that an act is right and lawful.

"This instruction applies only to the crime alleged in Count 3 of the indictment and has no application to the offenses alleged in Counts 1 and 2 of the indictment of this case.

"In the case of certain crimes it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed.

"Thus in the crime of theft, a necessary element is the existence in the mind of the perpetrator of the specific intent to defraud, and unless such intent so exists that crime is not committed.

"This instruction applies to the crimes alleged and charged in Counts 1 and 2 of the indictment and not to the offense alleged in Count 3 of the indictment."

"The word 'wilfully,' when applied to the intent with which an act is done or omitted and as used in these instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage.

"And this instruction, likewise, ladies and gentlemen, applies only to the crime alleged in Count 3 of the indictment."

These instructions were erroneous. By them the jury was instructed that it could convict defendants of *conspiracy* to violate section 2141 of the Business and Professions Code upon a showing of their intent to commit acts which were in themselves violative of that section. The jury was *expressly told* that a "specific intent" in the minds of the defendants was needed to convict under counts 1 and 2 relating to grand theft, but that as to count 3, the defendants could be guilty even though they formed their "partnership" with no "intent

to violate [the] law, or to injure another, or to acquire any advantage.''

These instructions would have been proper if count 3 merely charged a violation of section 2141, but they were erroneous in a case involving a *conspiracy* to violate that section. The essence of the crime of conspiracy is the ''evil'' or ''corrupt'' agreement to do an unlawful act. It is the evil intent that makes a combination criminally indictable. ''The association of persons with an honest intent is not conspiracy, and one of the tests on a conspiracy trial is, did the accused act in ignorance without criminal intent? In other words, did they honestly entertain a belief that they were not committing an unlawful act?'' (*People* v. *Bucchierre*, 57 Cal.App.2d 153, 163 [134 P.2d 505].) As stated by the New York Court of Appeals, ''The criminal quality [of a conspiracy] resides in the intention of the parties to the agreement, construed in connection with the purpose contemplated. The mere fact that the conspiracy has for its object the doing of an act which may be unlawful, followed by the doing of such act, does not constitute the crime of conspiracy, unless the jury find that the parties were actuated by a criminal intent.'' (*People* v. *Flack*, 125 N.Y. 324 [26 N.E. 267, 269, 11 L.R.A. 807].)

For these reasons it is often said that conspiracy is a ''specific intent'' crime (Harno, *Intent in Criminal Conspiracy* (1941) 89 U.Pa.L.Rev. 624, 636; Perkins, Criminal Law (1957) p. 544). This specific intent of the conspirators must be proved in each case by the prosecution and will not be presumed from the mere commission of an unlawful act (*People* v. *Bowman*, 156 Cal.App.2d 784, 797 [320 P.2d 70]; *People* v. *Maciel*, 71 Cal.App. 213 [234 P. 877]). Therefore, even though a conspiracy has as its object the commission of an offense which can be committed without any specific intent, there is no criminal conspiracy absent a specific intent to violate the law. That is, to uphold a conviction for conspiracy to commit a ''public welfare offense'' there must be a showing that the accused knew of the law and intended to violate it. (*Commonwealth* v. *Benesch*, 290 Mass. 125 [194 N.E. 905, 910]; *People* v. *Flack, supra,* 26 N.E. 267; *People* v. *Powell,* 63 N.Y. 88, 92; *Mitchell* v. *State,* 248 Ala. 169 [27 So.2d 36]; *Landen* v. *United States,* 299 F. 75; 72 Harv.L.Rev. 920, 936.)

The California cases are in accord with this position. In *People* v. *Bowman, supra,* the defendants were charged with conspiracy to violate section 2141 of the Business and Profes-

sions Code as well as with violating several sections of the Health and Safety Code. The court held that to sustain a conviction for conspiracy, "the accused must have had a specific intent to do an unlawful act or to do a lawful act by unlawful means. This, in one case, may involve proving that he had the intent to commit murder; in another, that he had the intent to steal; in another, that he had the intent to violate a statute. If, in a charge of conspiracy, the act involves a violation of positive law, the People must show the accused intended to violate it, or entered into the common purpose with knowledge that a violation of law would result from the commission of the contemplated act. Proof of the mere commission of the act is not enough—there must be proof of a specific intent to violate the law. . . ." (156 Cal.App.2d at p. 797. See also *People* v. *Bucchierre, supra,* 57 Cal.App.2d 153 [conspiracy to conduct an employment agency without a license] ; *People* v. *Eiseman,* 78 Cal.App. 223 [248 P. 716] [conspiracy to sell corporate securities without authorization].)

Thus, in reference to count 3 (conspiracy to violate section 2141 of the Business and Professions Code), the court erred in giving the challenged instructions. (*People* v. *Zerillo,* 36 Cal.2d 222, 231-232 [223 P.2d 223] ; *People* v. *Warren,* 175 Cal.App.2d 233 [346 P.2d 64] ; *People* v. *Barkoff,* 163 Cal.App. 2d 639 [329 P.2d 1005] ; *People* v. *Geibel,* 93 Cal.App.2d 147, 176-177 [208 P.2d 743].) But this error was not prejudicial. In view of the record, it cannot be said that it is reasonably probable that a different result would have been reached as to count 3 had these erroneous instructions not been given. The defendants' own testimony demonstrates that they knew it was unlawful to practice the healing arts without a license, and that they did not have a license. In view of the evidence, the jury must have determined that the defendants' "demonstrations" and "loans" were mere artifices used in an attempt to escape the reach of section 2141. The prosecution has shown that defendants "entered into the common purpose with knowledge that a violation of law would result from the commission of the contemplated act." (*People* v. *Bowman, supra,* 156 Cal.App.2d 784, 797.) Therefore, this error does not require a reversal as to this count.

It is also claimed that error was committed during the cross-examination of Marsh's character witnesses. Marsh called four character witnesses who testified as to his good reputation in the community for "truth, honesty and integ-

rity." On cross-examination each of the witnesses was asked whether he knew that Marsh had been excommunicated from the Mormon Church for immoral conduct with women. Defendant Marsh claims this was error.

 It is, of course, within the ambit of proper cross-examination of a character witness to inquire, in good faith, whether the witness has heard of specific misconduct of the defendant inconsistent with the trait of character testified to on direct (*People* v. *McKenna,* 11 Cal.2d 327, 335-336 [79 P.2d 1065]; *People* v. *Gordan,* 103 Cal. 568, 574 [37 P. 534]; 3 Wigmore, Evidence (3d ed. 1940) pp. 617-624). But, since such cross-examination tests the witness's knowledge of the defendant's reputation, it is elementary that the misconduct inquired of must be *inconsistent* with the character traits attested to on direct (McCormick, Evidence (1954) p. 335, fn. 14). In *People* v. *Roberson,* 167 Cal.App.2d 429, 431 [334 P.2d 666], it was held that to examine a witness who testified to the defendant's reputation for truth and veracity, about defendant's narcotic and petty theft convictions, was improper. These crimes were not inconsistent with his reputation for truth and veracity. In *Kennedy* v. *State,* 150 Tex. Crim. 215 [200 S.W.2d 400], character witnesses for the defendant attested his reputation for being a quiet, law-abiding citizen and also for his reputation for truth and veracity. The Texas court held that "as there was placed in evidence only his reputation as a peaceable and law-abiding citizen, the fact that he had or that witness had heard of illicit relations by him with women in the neighborhood was not inconsistent with that reputation." (200 S.W.2d at p. 403. See also *People* v. *Tucker,* 164 Cal.App.2d 624 [331 P.2d 160].) This same reasoning might be applied to Marsh's excommunication from the Mormon Church on moral charges. That is not necessarily a trait inconsistent with the witnesses' testimony that his reputation in the community for "truth, honesty and integrity" was good.

Moreover, the form of the qustions was incorrect. It is generally accepted that although the district attorney can ask the character witness, "Have you heard . . ." he cannot ask of the witness, "Did you know . . .?" (*People* v. *Neal,* 85 Cal. App.2d 765, 769-771 [194 P.2d 57]; *People* v. *McDaniel,* 59 Cal.App.2d 672 [140 P.2d 88]; McCormick, Evidence (1954) p. 335; 71 A.L.R. pp. 1543-1546.) The witness is testifying to the defendant's reputation in the community. The district attorney may ask the witness whether he has heard of some act

of defendant's misconduct to test the witness's knowledge of defendant's reputation and how truthfully it has been reported to the court. But, "There is a vast difference between inquiring about reports, rumors and the like, of a character witness and questions as to what the witness *knows* of defendant." (*People* v. *McDaniel, supra,* at p. 677.)[3]

These errors, however, were not prejudicial in this case. The vice of this type of cross-examination is that it brings before the jury, through an indirect type of hearsay, rumors of defendant's misconduct (3 Wigmore, Evidence (3d ed. 1940) p. 624; McCormick, Evidence (1954) p. 336). In the instant case, however, the story of Marsh's fall from the grace of the Mormon Church had already been introduced long before these character witnesses testified. Therefore, the error could not have been prejudicial.

Defendants next contend that there has been no proof of overt acts done to effect the object of the conspiracy charged in count 3. One of the overt acts charged is that defendants "sold" the machines in question. As is usual in such cases, the conspiracy was established by circumstantial evidence (*People* v. *Steccone,* 36 Cal.2d 234, 237-238 [223 P.2d 17]). Of course, the overt acts of one defendant are binding on the others (*People* v. *Pacheco,* 194 Cal.App.2d 191, 196 [14 Cal.Rptr. 840]). The jury was not required to accept defendants' story that they did not "sell" the machines, or "give" treatments. The evidence was sufficient to warrant the jury in concluding that the defendants' characterization of their operation as a "loan" or "donation" was a mere subterfuge to avoid the law, and that what defendants called a "demonstration" was in reality a "treatment," and that a "loan for a donation" actually was a "sale."

The defendant Crane contends that when the state agents arrested him at his home they ransacked his laboratory and confiscated property, much of which was not related to the charges brought against him. By this claimed illegal search and seizure all defendants assert they were deprived of evidence needed at their trial. There is no merit to this contention. Defendants admit that none of this property was introduced into evidence by the People. That being so, the claimed illegality of the search and seizure offers the defendants no ground on which to attack the conviction. (*People* v. *Combes,*

[3]Insofar as *People* v. *Sieber,* 201 Cal. 341 [257 P. 64], states that it is proper to cross-examine a character witness by the "Did you know . . ." question, it is disapproved.

56 Cal.2d 135, 146 [14 Cal.Rptr. 4, 363 P.2d 4]; *People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633]; *People* v. *Schmitt, supra,* 155 Cal.App.2d 87, 102-103).

Defendants next contend that they were prejudiced by the admission of evidence concerning immoral conduct by defendant Marsh when he was treating Mrs. Thomas. This evidence was received as part of the witnesses' testimony describing Marsh's method of treating her sore throat. As such, it was clearly admissible, as bearing on Marsh's asserted good faith in giving her treatment. Moreover, there was no objection made by defendants to this testimony. This being so, they cannot now claim error.

The other contentions of error are lacking in substantiality and need not be separately discussed.

The judgment and order appealed from are reversed insofar as they relate to the two counts involving attempt or conspiracy to commit grand theft, but are affirmed insofar as they relate to the count involving conspiracy to commit a violation of section 2141 of the Business and Professions Code.

Gibson, C. J., Traynor, J., and Tobriner, J., concurred.

SCHAUER, J., and McCOMB, J., Concurring and Dissenting.—Applying the rules of law governing appellate review we would affirm the judgment in its entirety.