McMillan, judge.
The appellant was convicted of four counts of theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama (1975), three counts of theft of property in the second degree, in violation of § 13A-8-4, Code of Alabama (1975), and six counts of possession of a forged instrument in the second degree, in violation of § 13A-9-6, Code of Alabama (1975). The appellant was sentenced to 10 years in the State penitentiary on each count of the indictment, the sentences to run concurrently. Pursuant to the Split-Sentence Act, the trial court ordered the appellant to serve three years of the sentence in the State penitentiary with the remainder of the sentence to be served on probation. The appellant was further fined a total amount of $25,000 (one-thirteenth of that amount on each count) and was additionally ordered to pay $16,700 in restitution and $325 to a victims compensation fund.
The record indicates that the charges in the present case stemmed from the appellant’s role, as agent for several insurance companies, in insuring the City of Fort Payne and the DeKalb-Cherokee Counties Gas District. The City of Fort Payne and the DeKalb-Cherokee Counties Gas District had been experiencing an “insurance crisis,” in that there had been four natural gas pipeline explosions, which resulted in property damage, one serious injury, and three fatalities. Moreover, several lawsuits had been filed against the Gas District. Thereafter, the District’s policy was cancelled and the appellant, who had acted as agent for the insurance company which had formerly insured the District, had a difficult time finding a company to write the Gas District’s liability coverage. The appellant was eventually able to find coverage through various surplus lines brokers. There was testimony at trial which indicated that an agent typically splits the commission on premiums with the broker, when dealing with insurance coverage through a surplus lines broker. Thus, instead of making the 20 percent commission on the premiums, which the appellant had made when he was agent for the District’s former insurance company, the appellant would only make a 10 percent commission in brokering the insurance.
*917 The appellant’s defense at trial was that he had no intent to deceive or defraud anyone. He testified that he had informed both Bill Wright, the manager of the Gas District, and Fred Purdy, the Mayor of the City of Fort Payne, that he could not afford to handle the coverage unless he could make an additional commission on the policies. He further testified that the additional charges were acknowledged and agreed upon. Bill Wright testified that he discussed obtaining insurance with the appellant and that the appellant informed him that he must have some additional payment above the commission, because of the required split in pay with a broker. Wright testified that he agreed to pay an additional amount in order to get the insurance which the Gas District needed. He testified that he was not deceived about the extra amounts and that Fred Purdy, the Mayor of the City of Fort Payne at the time of the alleged offense, was present and took part in these discussions. The following transpired outside the presence of the jury during Wright’s testimony:
“[DEFENSE COUNSEL]: Okay. I would expect to ask this witness about conversations that took place in his presence between Bill Kellett and Bill Purdy as mayor pertaining to the policies of the City of Fort Payne and of the Gas Board and this witness will testify in response to my questions that he was present; that Fred Purdy encouraged and authorized Mr. Kellett to charge fees and commissions over and above the amount of the premiums on these policies, and that this witness was privy to those conversations and was privy to those transactions and that was done. He will also testify if asked the question I would ask this question. I thought you had rather I do it in camera. I will be glad to do it either way. I would also ask the question about the changes made on the policies and I would expect that this witness would testify that he discussed that with Fred Purdy, the mayor, and the chairman of the Gas District and that he heard it discussed between Mr. Kellett’s employee, Juanita Johnson, and Mr. Purdy and that Mr. Purdy was the one that told her how to make alterations to the policies and the changes on the amounts of the premiums on the face of the policies to comply with the invoices in question. That’s the proffer of the questions and the answers of this witness, and I would request to be able to ask those questions and to receive those answers.
“THE COURT: All right. For the record, I’m saying that at this point that I’m not going to allow you to offer any statements made by Purdy. That’s my ruling as to Purdy on the basis that it is an assertion by someone outside this courtroom with no opportunity to cross-examine and it violates the hearsay rule unless you can show me some exception.
“[DEFENSE COUNSEL]: Well, the exception is — the purpose of it is to show notice. He is charged with deception. It would show notice to the very person that was transacting the business for the City of Fort Payne and for the Gas District. It would show that there was no deception. It would also show that there was a transaction, an oral agreement, pertaining to this. The hearsay rule is when you offer testimony to prove the truth of the matter stated, and this is merely to show notice, to show knowledge and to show that there was a transaction. I think it is clearly not hearsay. And I don’t want to waive it. And I will be glad to ask the questions in front of the jury or do it this way, but I think that the answer would clearly alleviate any problems of the defendant.
“THE COURT: It would seem to the Court that you are offering proof on the issue of the City and the Gas Board consenting to these alterations and that you are offering it for the truth of it, and for that reason I would have to sustain the objection.
“[DEFENSE COUNSEL]: The knowledge of it and it wasn’t done for the purposes to deceive or defraud.
“THE COURT: I understand.
“[DEFENSE COUNSEL]: But anyway, that’s the proffer.
*918 “THE COURT: I understand. Your exception to all of this is on the record and noted.”
Moreover, during the testimony of an employee of the appellant’s insurance agency, the following transpired:
“[Defense Counsel]: Did you ever hear Mr. Kellett have a conversation with Mr. Purdy and Mr. Wright about the problems and the lack of profitability?
“A: Yes, he told them it was very difficult to obtain.
“[Defense Counsel]: Would you tell the ladies and gentlemen of the jury about that discussion and any arrangements that might have been made as a result of it?
“A: They were discussing the fact that with the explosions that the premium was going to be extremely high and they would have to — Mr. Kellett would have to split his commission with another agency so, therefore, he would not be really getting paid for the time due.
“[Defense Counsel]: Putting in more time and getting less money?
“A: That’s correct.
“[Defense Counsel]: And was any solution reached to that situation?
“A: I believe they informed him that they—
“[Assistant Attorney General]: I object to hearsay, your Honor.
“THE COURT: What somebody told him, yes.
“[Defense Counsel]: Can we approach the bench just a second, your Honor? “THE COURT: Yes, sir.
“[Defense Counsel]: This is not hearsay. This is an act of making a contract to purchase insurance by the people in charge of the Gas District and the City of Fort Payne. There is no question that it is not hearsay and admissible. If there is a question about it, we need to take a break and take it up. Let me make a proffer and then you can see if you don’t agree. I expect this witness to testify that in her presence that the mayor of Fort Payne who is in charge of buying the insurance for the City and that Bill Wright who is in charge of purchasing the insurance for the Gas District told Mr. Kellett they didn’t care how much he made as long as he found insurance for them if it was cheaper than they could get anywhere else; that if he could find that, that he could charge fees over and above the amount of the premium; that she heard this and that as a result of that these policies were later issued, and she will testify about subsequent conversations along those lines.
“[Assistant Attorney General]: It would be a good proffer if Purdy and Wright are going to testify. Are Pur-dy and Wright going to testify?
“[Defense Counsel]: Mr. Wright is going to testify. I haven’t got Mr. Pur-dy. But it is not offered for the truth of what was said. It is just offered to the fact that she overheard it and my client had an opportunity to rely on it.
“THE COURT: I am going to sustain the objection. I think it is hearsay.
“[Defense Counsel]: We except.”
After the agreement was made for the insurance coverage for the Gas District and the City of Fort Payne, invoices were sent by the appellant for premium payment. In most cases, the invoices were paid in full four to six weeks before the actual policies were issued by the insurance companies. After the policies were issued, alterations were made to the policies, reflecting a higher premium than that charged by the issuing insurance company. The evidence was undisputed at trial that two of the appellant’s employees actually made the alterations.
The following transpired during the testimony of one of the appellant’s employees:
“[Defense Counsel]: All right. And can you tell us why there was a discrepancy between the invoice and the amount that the policy cost the Kellett Insurance Agency?
“A: Because at the time of the submission of the bid there was a policy fee that was charged or a brokerage fee that was charged at the time that the bid was *919 submitted. So when the policy came in about four to six weeks later, they, of course, did not reflect the policy fee. “[Defense Counsel]: All right. And did you discuss that fact with someone?
“A: Yes.
“[Defense Counsel]: Who did you discuss it with?
“A: We were informed by Mr. Purdy or Mr. Wright, I’m not sure exactly which one of them—
“[Assistant Attorney General]: Objection, your Honor, to hearsay.
“THE COURT: Sustained. What somebody else told her would be hearsay. Disregard that statement.
[[Image here]]
“[Defense Counsel]: An objection was sustained to a question I had asked her concerning any conversations with Mr. Purdy or Mr. Wright concerning the changes that were made on the policies. The witness is expected to testify that Mr. Purdy told her how to alter the policies, the alterations with which Mr. Kellett is charged; that the alterations on the face of the exhibits up here were done by her at the request of Mr. Purdy and she discussed it with Mr. Purdy; that he told her — instructed her how to do it; that it was done in accordance with his instructions and that she discussed it with him after-wards and he said that is the way he wanted it done, and that Mr. Kellett didn’t have anything to do with it. I think the objection was on the basis of hearsay.
"THE COURT: Okay. I sustained it on the basis of hearsay.
“MR. McGEE: We except.”
The appellant argues that the trial court erred in ruling that the above-quoted testimonies constituted hearsay. Hearsay evidence involves an out-of-court statement offered for the truth of the matter stated. Ex parte Bryars, 456 So.2d 1186 (Ala.1984). See also C. Gamble, McElroy’s Alabama Evidence (3d ed. 1977), § 242.01(1). The defense counsel informed the trial court that the testimony was intended to be admitted to show that the alteration “wasn’t done for the purpose to deceive or defraud.” Thus, the testimony concerning the statement would not be entered for the truth of the matter asserted but rather to show that the statement was made and to show the reasonableness of the appellant’s actions or beliefs.
These statements were clearly relevant as they tended to show that the appellant neither intended to, nor did, deceive those he was alleged to have deceived. Cf. Momingstar v. State, 59 Ala. 30, 34 (1877); Carter v. State, 55 Ala. 181 (Ala.1876). “A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that it was made, provided that purpose be otherwise relevant at trial. 5 Wigmore, Evidence § 1361; 6, Ibid., § 1770; Motors Ins. Corp. v. Lopez, 217 Ark. 203, 229 S.W.2d 228 (1950).” Bryant v. Moss, 295 Ala. 339, 329 So.2d 538, 541 (1976).
“Whenever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned.”
6 Wigmore, Evidence § 1789 (Chadbourn rev. 1976). (Emphasis in original). Among the numerous cases cited pursuant to this section in Wigmore, Evidence, are: Frank v. United States, 220 F.2d 559 (10th Cir. 1955) (a case involving the use of mail to defraud in which statements made to the accused were admitted to show his knowledge and good faith); People v. Vogel, 46 Cal.2d 798, 299 P.2d 850 (1956) (in which statements in a bigamy ease were held admissible by the defendant in support of his defense of his reasonable belief that he was free to remarry); People v. Marsh, 58 Cal.2d 732, 26 Cal.Rptr. 300, 376 P.2d 300 (1962) (in a theft by false pretenses case, numerous statements and documents were held admissible on the issue of the defendants’ intent); Gresham v. State, 216 Ga. 106, 115 S.E.2d 191 (1960) (in a murder ease, statements told to the defendant were admissible as explanatory of his conduct); *920 State v. Morgan, 211 La. 572, 30 So.2d 434 (1947) (in a murder case, statements made to the defendant were admitted to explain his conduct in procuring the shotgun); State v. Bixby, 27 Wash.2d 144, 177 P.2d 689 (1947) (in a subornation of perjury case, the evidence was admitted on the issue of good faith and belief of the defendant); Apton v. Barclays Bank Ltd,., 276 App. Div. 910, 94 N.Y.S.2d 1 (1950), affirmed, 301 N.Y. 601, 93 N.E.2d 495 (1950) (information given to a bank was considered on the question of the bank’s good faith in transferring funds).
“When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, such as being put on notice or having knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith or voluntariness of the subsequent conduct of X, or anxiety, the evidence is not subject to attack as hearsay.”
McCormick, On Evidence (3d ed. 1984), § 249 at 733-734 (Footnotes omitted.)
Because of the integral roles of the elements of “intent to deprive” and “knowingly obtains by deception” in the offense of theft by deception, § 13A-8-2(l), Code of Alabama (1975), and the element of “intent to defraud” in the offense of possession of a forged instrument, § 13A-9-6, Code of Alabama (1975), a showing of consent by the alleged victims could have led to an acquittal. “Certain crimes ... are defined in terms of the victim’s lack of consent, and as to these the consent of the victim is obviously a bar to conviction.” 1 W. La-Fave and A. Scott, Substantive Criminal Law § 5.11(a) (1986) at 688. A showing of the mayor’s consent would have negated the appellant’s intent to defraud or deceive, and thereby precluded a finding of guilt of the charged offenses.
“The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense of such consent negatives a required element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense.”
Section 13A-2-7(a), Code of Alabama (1975). Therefore, this cause is due to be reversed and remanded for a new trial.
REVERSED AND REMANDED.
TAYLOR, P.J., and PATTERSON, J., concur.
BOWEN, J., concurs specially with opinion.
TYSON, J., recuses himself.